(No. 26763.—)

EDWARD A. MILLER, Appellant, *vs.* CHARLES BULLINGTON
*et al.,* Appellees.

*Opinion filed November 17, 1942.*

GEORGE J. CRANE, for appellant.

FRANCIS L. BRINKMAN, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

The plaintiff, Edward A. Miller, on March 20, 1941, brought an action of ejectment in the superior court of Cook county against defendant Charles Bullington for the possession of premises consisting of two lots improved with a one-story frame house, located at 4761-63 Shields avenue, in Chicago. Bullington, by his plea, disclaimed interest otherwise than as a tenant of Agnes Barry, Eva Maloney, Libby B. Sullivan and Mary B. Doherty, who were made parties defendant pursuant to their plea alleging ownership and that Bullington was their tenant. Later, an additional plea was filed in their behalf, setting up the facts upon which their claim of fee simple title in the premises was based. The cause was tried by the court without a jury, the issues were found in favor of defendants, and judgment was entered accordingly. Plaintiff appeals.

Plaintiff, an attorney at law, claims title by virtue of a quitclaim deed from John T. and Theresa Nolan, executed February 1 and recorded February 3, 1941. The deed recites a consideration of one dollar and other good and valuable consideration, and, in lieu of United States revenue stamps, contains the legend, "No documentary stamps necessary. Cash consideration not over one hundred dollars." The principal controversy is whether plaintiff's deed is superior to a master's deed relied upon by defendants, dated August 8, 1935, and claimed to have been acknowledged and delivered on August 22, 1935, but not recorded until April 8, 1941, after this action was instituted.

From the evidence and admissions in the pleadings, it appears that on September 17, 1927, title to the premises was in Garret Barry and his wife, Margaret Barry, parents of the four principal defendants. On the day named, they deeded the property to John T. and Theresa Nolan, subject to a purchase-money mortgage of $4000. Nolan and his wife defaulted in the payments on their mortgage indebtedness. January 13, 1930, Garret Barry, by his attor-

ney, Michael Sullivan, a son-in-law, instituted foreclosure proceedings. Nolan and his wife were defaulted, a foreclosure followed in due course, a certificate of purchase was issued to Barry, and a duplicate was recorded. By quitclaim deed, dated October 18 and recorded November 16, 1937, Barry conveyed lot 13 to his daughters, Agnes and Eva Barry. A widower since 1938, Barry died intestate June 7, 1939, leaving the four principal defendants surviving as his only heirs-at-law.

Master Ninian H. Welch, under whose deed defendants base their title, died April 21, 1939. The notary public who witnessed the deed, Edwin T. Schneberger, a lawyer associated with Welch, testified it was duly acknowledged by Welch in his presence August 22, 1935. Schneberger also identified a master's file in the case of *Barry* v. *Nolan,* as being part of their office file. It contained a notation in the handwriting of Sol. A. Hoffman, a partner of Welch, reading: "Deed delivered 8/22/35 to M. Sullivan, atty." Under this notation appear the letters "F Pd" (fee paid), and the signature of Michael J. Sullivan.

Sullivan testified that in 1935, he, as attorney for Barry, surrendered the certificate of purchase and received a master's deed conveying to Barry the property foreclosed, and that he retained the deed in his files until after this action was commenced when he delivered it to defendants' present attorneys. Agnes Barry, one of the defendants, testified that upon completion of the foreclosure proceedings in 1932 her father took possession of the premises, and that he and his heirs and grantees have since remained continuously in possession.

Plaintiff testified that he learned of the foreclosure proceedings through Nolan and his wife while representing them in another matter, but that this action was filed in his own behalf. His testimony discloses that in the last week of January, 1941, he visited the property, found no one present, saw a "For Sale" sign of the Union Invest-

ment Company, learned from a next door neighbor the name of the tenant and also that Garret Barry had been dead for several years; that the next day he telephoned Sullivan's office and was informed he was absent from the city and was not expected to return, and that the day following he went to the office formerly occupied by master Welch, interviewed some unknown and unidentified person who told him that no master's deed in the Nolan foreclosure had issued.

Additional testimony of plaintiff relates to his inquiries made subsequent to February 1, 1941. He testified that after recording his deed he interviewed Bullington, the occupant, on February 6; that Bullington described his status as that of a tenant, paying rent to the Union Investment Company. Bullington, according to plaintiff, also informed him that Garret Barry had died in May, 1939. He thereupon informed Bullington of his deed from Nolan. Plaintiff testified he telephoned the office of the Union Investment Company the following day, announced that he was the owner of the property in question, and he, in turn, was requested to put his claim in writing. February 7, plaintiff addressed a letter to the company, and, subsequently, three letters to Bullington, setting forth his claim to the property by virtue of the deed from Nolan and his wife. March 18, demand for possession was served on Bullington.

Plaintiff admits that prior to the date of his deed from Nolan he knew there had been foreclosure proceedings and that a certificate of purchase had issued to Garret Barry. He also concedes these facts were sufficient to put him on inquiry as to whether a master's deed had actually been issued, but contends that the period of redemption having expired November 18, 1932, the five-years' period within which a master's deed could issue expired November 18, 1937; that a master's deed issued thereafter would be void, and that the master's deed of August 22, 1935, not having

been on record February 1, 1941, when he obtained his deed, the notice afforded by the recorded certificate of purchase was ineffectual. As to the quitclaim deed dated October 18, and recorded November 16, 1937, plaintiff contends he had no knowledge that the daughters claimed title to lot 13; that he had a right to presume the grantees under Barry had acquired only the interest Barry had as a holder of a certificate of purchase, and that therefore it was incumbent upon defendants to prove the quitclaim deed was a conveyance of the title and not merely of Barry's interest under the certificate of purchase.

Section 30 of the Judgments and Decrees Act (Ill. Rev. Stat. 1941, chap. 77, par. 31,) pertains to the issuance of masters' deeds and, so far as pertinent, provides: "When the premises mentioned in any such certificate shall not be redeemed in pursuance of law, the legal holder of such certificate shall be entitled to a deed therefor at any time within five years from the expiration of the time of redemption. * * * When such deed is not taken within the time limited by this Act, the certificate of purchase shall be null and void * * * ." Under this section, where there is no redemption and the legal holder of a certificate of purchase who is entitled to a deed fails to take out such deed within five years after the expiration of the period of redemption, his certificate becomes null and void. (*Lightcap* v. *Bradley,* 186 Ill. 510.) These principles are applicable to a situation where a party is "entitled to a deed" and "such deed is not taken" within the time limited in the act. Section 30, as defendants maintain, is, however, devoid of any provision requiring the recording, within the five-years' period, of a master's deed duly executed and delivered within the specified period, as claimed and proved by uncontroverted testimony in the present case.

Having proved apt delivery of a valid master's deed such deed was *prima facie* proof of title in defendants' predecessor in title. (*Morey* v. *Brown,* 305 Ill. 284.) The

recording of conveyances and of instruments affecting the title to real estate is governed by section 30 of the Conveyances Act, (Ill. Rev. Stat. 1941, chap. 30, par. 29,) which provides: "All deeds, mortgages and other instruments of writing which are authorized to be recorded, shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers, without notice; and all such deeds and title papers shall be adjudged void as to all such creditors and subsequent purchasers, without notice, until the same shall be filed for record." The statute gives a priority to the deed first recorded only where the grantee of the recorded deed has acted fairly and in good faith. (*Reed* v. *Eastin,* 379 Ill. 586; *McConnel* v. *Reed,* 4 Scam. 117.) Possession of real estate by a grantee in a deed is notice, although the deed has not been recorded. (*Bullard* v. *Turner,* 357 Ill. 279; *Mathias* v. *Fulton,* 241 id. 598.) Again, possession of premises by a landlord through his tenant is notice of the landlord's rights. (*Mallett* v. *Kaehler,* 141 Ill. 70.) One having notice of facts which would put a prudent man on inquiry is chargeable with knowledge of other facts which he might have discovered by diligent inquiry. Whatever is notice enough to excite attention and put the party on his guard is notice of everything to which such inquiry might have led and every unusual circumstance is a ground of suspicion and demands investigation. *Reed* v. *Eastin, supra; Struve* v. *Tatge,* 285 Ill. 103; *Blake* v. *Blake,* 260 id. 70.

Here, during the week preceding February 1, 1941, plaintiff visited the premises, interviewed a neighbor, learned there was a tenant and that Barry had been dead for several years. His investigative efforts for the purpose of determining who, if anyone, claimed ownership of the premises, were confined to a telephone call to the office of Sullivan and a visit to the office of the master, where he was informed by someone that no master's deed in the Nolan

244

matter had been issued. He did not interview Bullington, the tenant, or communicate with the Union Investment Company, until after his deed was recorded. By his own admissions, plaintiff knew of Barry's previous death, of the recorded certificate of purchase to Barry and the subsequent quitclaim deed from Barry conveying lot 13 to his daughters, and, also, that the premises were in possession of Bullington, a tenant. Knowledge of these material facts by plaintiff, a lawyer, should have been and was sufficient to put him on notice and render him chargeable with knowledge of any other pertinent facts which, on diligent inquiry, would have been readily developed.

The judgment of the superior court is right, and is affirmed.

*Judgment affirmed.*