D. Nelsen & Sons, Incorporated *et al.,* Plaintiffs-Appellants, *v.* General American Development Corporation *et al.,* Defendants-Appellees.

(No. 55984;

First District—May 18, 1972.

Price, Cushman, Keck & Mahin, (Edward S. Silber, John R. F. Baer, and Robert F. Semmer, of counsel,) for appellants.

Winston, Strawn, Smith & Patterson, of Chicago, and Linde, Thomson, Van Dyke, *et al.,* of Kansas City, Missouri, (Stanley A. Walton III, Edward Paul Knoll, Albert Thomson, and Dennis J. Brundige, of counsel,) for appellees.

Mr. PRESIDING JUSTICE McGLOON delivered the opinion of the court:

This is an interlocutory appeal from an order of the Circuit Court refusing to grant a temporary injunction upon the petition of plaintiffs. The

injunction was sought to keep certain funds, located in Illinois and represented by a non-negotiable certificate of deposit, from passing out of this state to the First California Company, the out-of-state assignee of the certificate of deposit. Plaintiffs argue that under either the Uniform Commercial Code or the common law of Illinois they have asserted a *prima facie* claim or right to the funds in issue such as to justify the issuance of a temporary injunction until the rights of the parties can be litigated in full. Furthermore, plaintiffs assert that the trial court improperly excluded relevant testimony from the hearing below.

We reverse and remand.

The facts adduced at the hearing are as follows: In the fall of 1969 an agent of the defendant, General American Development Corporation (hereinafter referred to as "G.A.D.C.") approached Daniel B. Nelsen, Jr. and inquired whether he would be interested in a sale and buy-back arrangement concerning certain property owned by G.A.D.C. Negotiations ensued from November, 1969, to March, 1970. It was agreed that Nelsen's company, D. Nelsen & Sons, Inc., would borrow $300,000 from defendant, Suburban Trust & Savings Bank (hereinafter referred to as "Suburban Trust"). This amount would represent a down payment on the land in question which was given a sale price of $2,000,000. Upon receiving a check for $300,000 from Suburban Trust, plaintiffs were to endorse it over to G.A.D.C.. G.A.D.C. was then to endorse it back to Suburban Trust which would issue a non-negotiable certificate of deposit to G.A.D.C. G.A.D.C. was to hold the certificate of deposit until such time as the buy-back portion of the agreement was to be executed in October of 1970. The funds represented by the certificate of deposit were to be used to discharge the loan of $300,000 owed Suburban Trust by Nelsen, Inc. Furthermore, Nelsen, Inc. was to receive a substantial profit from the sale-back of the property.

Matters did not materialize exactly as planned. Nelsen borrowed the $300,000, endorsed it to G.A.D.C., which in turn endorsed it back to Suburban Trust, which issued a non-negotiable certificate of deposit naming G.A.D.C. as payee. However, rather than holding the certificate of deposit until the buy-back was to take place, G.A.D.C. assigned it to defendant, First California Company (hereinafter referred to as "F.C.C."). This occurred on July 6, 1970. F.C.C. was in the bond and securities business, and the assignment of the certificate of deposit represented partial payment of a debt of $455,500 owed F.C.C. by G.A.D.C.

Mr. Mayrisch, Vice President and Manager of the Municipal Bond Department of F.C.C., testified that Mr. Andrade, an officer of G.A.D.C., informed him that G.A.D.C. had a moral obligation not to cash the certificate of deposit. When plaintiffs' attorney asked Mr. Mayrisch, "Mr.

Andrade advised you that *you* had a moral obligation, is that correct?", Mr. Mayrisch replied, "Yes." F.C.C. took the instrument nevertheless feeling, in the words of Mayrisch, that "[A] half is a little bit better than none." This was evidently because F.C.C. had some doubt as to G.A.D.C.'s solvency. F.C.C. also requested and obtained separate written warranties from G.A.D.C. that there were no encumbrances upon the instrument, and F.C.C. agreed not to liquidate the instrument until January 1, 1971. Written notice of the assignment was made to Suburban Trust, but no acknowledgement was made until two months later.

When Nelsen learned of the assignment in late summer of 1970, he protested vigorously to officers of both the bank and G.A.D.C., but was assured by the latter that things were being done on Nelsen's behalf and not to worry about it.

F.C.C. held the certificate of deposit until December 1, 1970. On that day it assigned the certificate to Central National Bank of Chicago. It remained with that bank until April of 1971 when Central National Bank of Chicago reassigned the certificate to F.C.C. This reassignment occurred because a temporary restraining order issued upon the commencement of plaintiffs' action, and F.C.C. did not wish to have Central National Bank, one of its good customers, involved in a lawsuit.

Both parties agree that the Uniform Commercial Code is applicable to the issues before us. (See Ill. Rev. Stat. 1969, ch. 26, par. 3—101 *et seq.*) Section 3-805 of the Code states that:

"Instruments Not Payable to Order or to Bearer. This Article applies to any instrument whose terms do not preclude transfer and which is otherwise negotiable within this Article but which is not payable to order or to bearer, except that there can be no holder in due course of such an instrument."

The certificate of deposit in this case meets all of the requirements of negotiability except that it is not payable to order or to bearer. (Ill. Rev. Stat. 1969, ch. 26, par. 3—104(1)(d).) Thus, under the rule of par. 3—805, F.C.C. can be a holder (see Ill. Rev. Stat. 1969, ch. 26, par. 1—201(20)), but not a holder in due course. Ill Rev. Stat. 1969, ch. 26, par. 3—302.

The rights of one not a holder in due course are set out in Ill. Rev. Stat. 1969, ch. 26, par. 3—306, which reads in relevant part as follows:

"Rights of One Not Holder in Due Course.

Unless he has the rights of a holder in due course any person takes the instrument subject to

(a) all valid claims to it on the part of any person; and

(b) all defenses of any party which would be available in an action on a simple contract; and  \*  \*  \*."

It is Section (a) which is the basis for plaintiffs' argument to this Court. Plaintiffs assert a *prima facie* "claim" to the certificate in question arising out of the following facts: Plaintiffs had an agreement with G.A.D.C. whereby the certificate was to be held by G.A.D.C. until the buy-back of the real estate occurred at which time it was to be used to discharge plaintiffs' indebtedness to Suburban Trust. The officers of Suburban Trust were aware of this agreement. When F.C.C. acquired the certificate by assignment from G.A.D.C., they were aware that there was a "moral obligation" not to cash it until the end of the year. Also, there is some evidence that G.A.D.C. was to take the instrument back from F.C.C. after a time. It is these facts which, plaintiffs allege, should have put F.C.C. on either actual or constructive notice of plaintiffs' rights in the certificate. In support of this reasoning, plaintiffs refer us to the case of *Miller v. Bullington* (1942), 381 Ill. 238, 44 N.E.2d 850, wherein the Court states:

"One having notice of facts which would put a prudent man on inquiry is chargeable with knowledge of other facts which he might have discovered by diligent inquiry. Whatever is notice enough to excite attention and put the party on his guard is notice of everything to which such inquiry might have led and every unusual circumstance is a ground of suspicion and demands investigation." 381 Ill. 238 at 243, 44 N.E.2d 850 at 852.

■■ The primary purpose of a temporary injunction is to preserve the *status quo* until the trial court has had an opportunity to consider the issue on its merits. (*O'Brien v. Matual* (1957), 14 Ill.App.2d 173, 144 N.E.2d 446.) We think that the plaintiffs have presented a *prima facie* case for the relief sought. The evidence adduced at the hearing tends to establish some rights of plaintiffs in the proceeds of the certificate. Furthermore, if the injunction were not to be allowed, plaintiffs' success on the merits could be largely without meaning. This is because there is evidence in the record to suggest that G.A.D.C. would be, without the proceeds of the certificate, insolvent. Such a fact is pertinent to our query as to whether the injunction should issue. *Keeshin v. Schultz* (1970), 128 Ill.App.2d 460, 262 N.E.2d 753.

■■ Finally, plaintiffs' evidence of the minutes of a meeting of the Discount Committee of Suburban Trust was improperly excluded. These minutes were relevant as corroboration of Nelsen's testimony that the certificate of deposit would represent funds to be used in the repayment of his loan. For this limited purpose they should have been admitted.

For the above stated reasons, the order of the Circuit Court is reversed, and this case is remanded with directions to enter a temporary injunction pending disposition of the case on its merits.

Reversed and remanded with directions.

DEMPSEY and McNAMARA, JJ., concur.