GLENN DUVAL et al., Plaintiffs-Appellees, v. BURT SEVERSON et al., Defendants-Appellants.

(Nos. 58394, 58428 cons.;

First District (2nd Division)—October 23, 1973.

*Rehearing denied December 10, 1973.*

G. Kent Yowell, of Chicago, for appellants.

Wayland B. Cedarquist and N. A. Giambalvo, both of Chicago, (Boodell, Sears, Sugrue, Giambalvo & Crowley, of counsel,) for appellees.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Plaintiffs filed a complaint alleging breach of a preincorporation agreement. The trial court granted plaintiff's motions for preliminary injunctions and appointed a receiver *pendente lite*. From the orders of the trial court, defendants have filed two interlocutory appeals which have been consolidated. Defendants contend that the trial court incorrectly construed the agreement and abused its discretion by entering the preliminary injunctions and appointing a receiver.

Prior to April 1, 1971, Burt Severson was the sole proprietor and operator of three bicycle stores. Donald Schillo and Glenn Duval were employes of Severson. Negotiations between Severson, Duval, and Schillo regarding incorporation of the bicycle business resulted in the execution by them of a preincorporation agreement dated March 1, 1971. The agreement provided, in pertinent part, as follows:

"1. Severson will form a corporation in which all the parties will participate as stockholders and engage in the operation of said business.

2. A corporation shall be organized under the laws of the State of Illinois to be known as Severson's Schwinn Cyclery, Inc.

\* \* \*

4. Upon incorporation the one hundred (100) shares of stock of the corporation shall be issued as follows:

(a) To Severson one hundred (100) shares of said authorized capital stock of which he shall retain fifty-one (51)

shares and shall sell, transfer and deliver forty-nine (49) shares to Duval and Schillo to be shared equally between them.

5. Severson shall and will transfer to said corporation all of the assets of his present bicycle business including the Aurora property now used by said business, subject however to all business liabilities shown on his present business records (balance sheets) including any mortgage liability on the Aurora property, all as of December 31, 1970. Personal liabilities and taxes owed by Severson are not to be included.

\* \* \*

7. Severson will accept as and for the shares of stock transferred to Duval and Schillo their respective personal notes for $25,725.00 each, payable in weekly installments of Fifty Dollars ($50.00) or more, said notes to be secured by and the satisfaction thereof limited to said corporate stock. In the event the weekly salary of the parties is increased the payments on said notes shall be increased proportionately.

\* \* \*

9. Upon receipt of stock Severson, Duval and Schillo shall vote said stock so that the directors for the first year shall be Severson, Duval and Schillo and the officers for the first year shall be:

Burt Severson—President
Donald Schillo—Secretary—Vice-President
Glenn Duval—Treasurer—Vice-President

(a) All corporate checks shall be signed by the President and co-signed by the Secretary or Treasurer.

10. Burt Severson shall be employed as General Manager for said corporation and Glenn Duval and Donald Schillo shall each be employed as sales manager. Said employment of each of the parties shall be for a period of not less than five (5) years at an annual salary of $18,200.00 payable in weekly installments during the period of his employment. Each of said parties shall devote his entire time and best efforts to the affairs of the corporation including the taking over and performing the work of any other employee in the event it becomes necessary. Such employment shall terminate upon the death or total disability of any of said parties or may be terminated upon the doing of any act or by any conduct contrary to the best interests of the corporation.

\* \* \*

18. The parties shall vote their stock so as to cause the corporation to adopt and ratify all the terms of this agreement.

\* \* \*

20. Any new store location or stores established by the parties, except such as results from a removal or transfer of the three original stores, shall be incorporated in a new corporation to be created by the parties in which corporation each of the parties hereto shall have one-third stock interest."

A rider to the agreement, dated March 15, 1971, provided:

"It is further specifically agreed that the provisions of this agreement may be altered or modified by mutual consent of all of the parties hereto."

At the first meeting of the directors of the corporation (Severson, Schillo and Duval) by-laws were unanimously adopted which provided, among other things, that compensation for directors and officers of the corporation could be fixed by the directors.

During the first year of business following incorporation Severson, Schillo and Duval were each paid $350 per week by the corporation resulting in a total yearly salary of $18,200 for each of them.

At a special directors meeting on March 24, 1972, it was resolved that Severson, Schillo and Duval would each recive a bonus and should receive salary increases. The amount of the bonus was agreed upon, but the amount of the salary increases was reserved for later determination. Subsequently each man received a bonus of $8500 and their salaries were raised so that, effective June 1, 1972, Severson received $700 per week and Schillo and Duval each received $500 per week.

At the annual shareholders meeting of the corporation in April, 1972, Barbara Severson, Severson's wife, was elected as a director of the corporation in place of Schillo. Mrs. Severson also replaced Schillo as Secretary-Vice-President.

In August, 1972, another bicycle store was purchased in the name of the corporate defendant for $20,000. Payment of the purchase price was accomplished with a check drawn on corporate funds and signed by Severson. At a directors meeting on September 29, 1972, Duval suggested that the new store be incorporated in a new corporation pursuant to the terms of the preincorporation agreement. Severson responded to the suggestion by saying that he would reduce the salaries of Duval and Schillo if they would not agree to the manner in which the new store was acquired. Duval would not agree to the transaction. A vote was taken concerning the proposed salary reductions. Severson and Mrs. Severson voted for the proposal and Duval voted against it. On October

7, 1972, Schillo and Duval received weekly salaries of $350 instead of the $500 they had been receiving.

On October 6, 1972, plaintiffs, Duval and Schillo, filed the instant suit alleging breach of the preincorporation agreement by Severson. Severson and Mrs. Severson (hereinafter the individual defendants) and Severson's Schwinn Cyclery, Inc. (hereinafter the corporate defendant) were named as parties defendant.

Plaintiff's weekly salaries were reduced to $250 on October 14, 1972. On October 20, 1972, on motion of plaintiffs, the trial court entered a temporary restraining order which: (1) ordered all defendants to pay plaintiffs a weekly salary of $550; (2) enjoined Severson from receiving and the corporate defendant from paying to him a weekly salary in excess of $550; and (3) ordered all defendants to cause the assets and property of the bicycle store acquired in August, 1972, to be transferred to a corporation to be organized by plaintiffs.

On October 27, 1972, the date the restraining order was to expire, the individual defendants' motion for a continuance was granted and they consented to an extension of the restraining order to November 9, 1972.

On November 6, 1972, the individual defendants filed an answer to plaintiffs' complaint and a counterclaim. The counterclaim alleged that defendant Severson was induced to enter into the preincorporation agreement by the fraudulent representations of plaintiffs and that the agreement was made without consideration or mutuality. On November 9, 1972, plaintiffs filed an answer to the counterclaim denying its allegations.

After a hearing, the trial court entered an injunction order on November 17, 1972, which: (1) restrained all defendants from paying Severson, Schillo and Duval weekly salaries in excess of $350 unless the three men mutually agreed to higher salaries; (2) ordered Severson, Schillo and Duval to repay to the corporate defendant all sums received by them as weekly salaries since June 1, 1972, in excess of $350 per week; and (3) ordered defendants to transfer the assets of the store acquired in August, 1972, to a new corporation to be organized by the parties in which Severson, Schillo and Duval would each have a one-third stock interest. Each of the men was ordered to pay, in cash, one-third of the minimum capitalization required by the Illinois Business Corporation Act.

The individual defendants paid their attorney fees incurred in connection with the above court proceedings with a check drawn on corporate funds.

On December 12, 1972, the individual defendants filed notice of an

interlocutory appeal from the November 17 order. On the same day plaintiffs filed a motion and supporting petition for a rule to show cause why defendants should not be held in contempt of court for alleged breaches of the October 20 and November 17 injunction orders. Plaintiffs' motion requested the appointment of a receiver for the business and assets of the corporate defendant and an order liquidating the assets of the corporation in accordance with the provisions of section 86 of the Illinois Business Corporation Act.

On December 15, 1972, a directors meeting was held. The individual defendants and plaintiffs were all present. The individual defendants voted to discharge plaintiffs as employees of the corporation, effective at the close of business on December 31, 1972. Duval voted against the resolution.

On December 21, 1972, plaintiffs made a motion for entry of a preliminary injunction restraining defendants from terminating or otherwise interfering with the employment of plaintiffs by the corporate defendant.

After hearings on the December 12 and December 21 motions, the trial court entered an order on January 2, 1973, which: (1) ordered the individual defendants to repay the corporation the amount of their attorney fees which had been paid with corporate funds; (2) declared the discharge of plaintiffs from employment by the corporate defendant void and ordered their salaries restored and maintained in accordance with the provisions of the November 17 injunction order; (3) ordered plaintiffs to continue making payments on their promissory notes; (4) specified the manner in which the additionally acquired store was to be incorporated; and (5) ordered the appointment of a receiver for the business and assets of the corporate defendant to maintain the status quo and not to liquidate the assets of the corporation.

The individual defendants filed an interlocutory appeal from the January 2, 1973 order which has been consolidated with their appeal from the November 17, 1972 order.

■■■ The individual defendants initially contend that the trial court incorrectly construed the preincorporation agreement. We have decided not to consider the arguments advanced by the parties in favor of their differing interpretations of the contract since we have concluded that our construction of the contract at this point in the controversy would be premature. The consolidated appeals which we are considering concern the correctness of the preliminary injunctions entered below. As yet there has been no hearing on the merits of the controversy. The purpose of a preliminary injunction is to preserve the status quo pending disposition of the case on the merits. (*D. Nelson & Sons, Inc. v. General American Development Corp.*, 6 Ill.App.3d 6, 284 N.E.2d 478.) The

validity of such an injunction does not depend on the ultimate conclusion to be reached on the rights involved in the litigation, but only shows that a sufficient case has been made to authorize the court to preserve the rights in issue in status quo until a final hearing on the merits. (*Lonergan v. Crucible Steel Co. of America*, 37 Ill.2d 599, 229 N.E.2d 536; I.L.P. Injunctions, § 4.) Therefore, we need not decide whether the contract requires construction, or, if so, what that construction should be. Such decision should be postponed until there has been a full hearing on the merits.

■■ The individual defendants contend that the provisions of the November 17, 1972 order concerning the salaries of the parties and the assets of the new store were improperly entered. It is our opinion that the order forbidding the corporate defendant from paying weekly salaries in excess of $350 to any of the three individuals involved unless all three agreed thereto, and the consequential order requiring all three individuals to repay to the corporate defendant all salary amounts received in excess of $350 per week since June 1, 1972 (the date on which the new weekly salary amounts became effective pursuant to the decision of the directors at the special meeting of March 24, 1972) were improper because, wthout any showing of an urgent necessity to do so, they preserved not the status quo, but rather a status quo ante. The status quo to be preserved by a preliminary injunction is "the last, actual, peaceable, uncontested status which preceded the pending controversy" (*O'Brien v. Matual*, 14 Ill.App.2d 173, 187, 144 N.E.2d 446; *American Snacks, Inc. v. Schaul*, 132 Ill.App.2d 718, 270 N.E.2d 209; *Millikan v. Jensen*, 4 Ill.App.3d 580, 281 N.E.2d 401.) In the instant case, that status was the status which prevailed on September 29, 1972, when the pending controversy surfaced at the directors meeting on that date. We are aware that, on the merits, plaintiffs now question the validity of the salary differential between their weekly salary of $500 and Severson's weekly salary of $700 which had become effective on June 1, 1972, but that present contention on the merits does not alter the fact that those salaries constituted the status quo "which preceded the pending controversy," and that that status quo had not been objected to by any of the three parties between June 1, 1972 and September 28, 1972. Nor was there any contention that the preservation of that status quo would result in irreparable injury to any of the three individual parties or to the corporate defendant.

■■ We are also of the opinion that the provision of the November 17, 1972 order requiring the transfer of the assets of the new store to a new corporation to be organized by the parties was incorrect for the reason that, far from preserving the status quo, it prematurely mandated the

alteration of the status quo. However, we have been informed during oral argument of this appeal that the order has already been complied with. In view of this fact, we think that it would be impractical to order the new corporation dissolved and its assets transferred back to the corporate defendant. After a hearing on the merits of the instant controversy it may well be determined that the new store must be incorporated separately from the corporate defendant, as it now apparently is. We think that the practicalities of the situation compel postponement of any further transfers of the assets in dispute until after there has been a full hearing on the merits of the case.

■■ The individual defendants next contend that the order of January 2, 1973, prohibiting all defendants from discharging plaintiffs from their employment by the corporate defendant as of December 31, 1972, and directing that the employment be continued pending the disposition of the cause on its merits was improper. In view of the purpose of a preliminary injunction (to preserve the status quo), we think not. The portion of that order relating to the weekly salary to be paid to each plaintiff is, of course, controlled by our salary ruling heretofore made in this opinion.

The individual defendants next insist that it was an abuse of discretion for the trial court to order them to repay to the corporation the amount of their attorney fees which had been paid with corporate funds. They argue that they are being sued in their capacities as officers and directors of the corporation and that their defense of the suit has resulted in benefits to the corporation; therefore, they insist that it was proper to charge the expenses of their defense against corporate funds. We disagree.

■■ The primary thrust of the complaint filed in this action alleges a breach of the preincorporation contract on the part of Severson. The complaint also alleges that Severson violated a fiduciary duty owed to plaintiffs and that Severson and Mrs. Severson conspired to defraud plaintiffs. The corporation was named solely as a nominal defendant. It is apparent that the individual defendants were not defending primarily in their roles as corporate officers and directors or on behalf of the corporation, but were defending against allegations directed to them personally. Therefore, the trial court correctly ordered the return of corporate funds used to pay their attorney fees.

The individual defendants finally argue that it was an abuse of discretion for the trial court to appoint a receiver for the corporate defendant.

■■ A court of equity has the power to appoint a receiver of a corporation when conditions of dissension, dispute, fraud or mismanage-

ment exist which make it impossible for the corporation to carry on its business or preserve its assets, but such power should only be exercised in cases of urgent necessity where there is a present peril to the interests of stockholders consisting of a suspension of corporate business and a threatened depreciation of corporate assets. (*Firebaugh v. McGovern,* 404 Ill. 143, 88 N.E.2d 473.) While the record in the instant case is replete with evidence of dissension and dispute between plaintiffs and Severson, we are not convinced that there exists a present danger to the interests of shareholders of such magnitude as to require the appointment of a receiver. There has been no showing that the business of the defendant corporation has suffered or that its assets have been depleted because of the dissension that exists. Therefore, it was error to order the appointment of a receiver for the corporation.

Therefore, we affirm the provision of the November 17, 1972 order concerning disposition of the assets of the new store pending a final hearing on the merits of the controversy; we also affirm the provisions of the January 2, 1973 order concerning the repayment by the individual defendants of attorney fees paid with corporate funds, and restraining the discharge of plaintiffs as employees. We reverse the provision of the November 17, 1972 order dealing with the salaries of Severson, Schillo and Duval and directing repayment of certain salary amounts to the corporate defendant; we reverse the provisions of the January 2, 1973, order calling for the appointment of a receiver for the defendant corporation. The cause will be remanded to the trial court for modification of the orders appealed from consistent with the views herein expressed, and the trial court will be directed to set this cause for a hearing on the merits.

Affirmed in part; reversed in part; and remanded with directions.

HAYES and DOWNING, JJ., concur.