THE BOARD OF EDUCATION OF SPRINGFIELD PUBLIC SCHOOLS, DISTRICT NO. 186, Plaintiff-Appellant, v. THE SPRINGFIELD EDUCATION ASSOCIATION *et al.*, Defendants-Appellees.

Fourth District   Nos. 14003, 14004 cons.

Opinion filed March 15, 1977.—Rehearing denied May 2, 1977.

Sorling, Northrup, Hanna, Cullen and Cochran, and Richard R. Grummon, both of Springfield, and Vedder, Price, Kaufman & Kammholz, of Chicago (Thomas L. Cochran, William S. Hanley, R. Gerald Barris, Robert C. Claus, John Relias, and Richard H. Schnadig, of counsel), for appellant.

Drach, Terrell & Deffenbaugh, of Springfield, for appellees.

Mr. JUSTICE MILLS delivered the opinion of the court:
"STATUS QUO: The existing state of things at any given date. * * * Last actual, peaceable, noncontested condition which preceded pending controversy. * * *" Black's Law Dictionary 1581 (4th ed. 1951).

The Board of Education of Springfield School District No. 186 brought an action for injunctive relief and damages, seeking to restrain defendants, the Springfield Education Association (SEA) and certain named persons, both individually and as representatives of the Springfield Teachers Association, from engaging in a work stoppage at plaintiff's schools. On motion of the Board, the trial court issued a temporary restraining order, prohibiting the SEA and the individual defendants from striking or picketing the schools. As part of the order, the trial court found that the 1975-76 contract between the parties constituted the *status quo*, restrained the Board from maintaining a previously imposed salary freeze, and directed the Board to pay the teachers pursuant to the expired contract. The Board appeals from the latter portion of this order and from the denial of its subsequent motion to modify the order.

In short—we affirm.

Now, to the reasons.

The Board raises three issues on appeal: (1) whether the trial court improperly found that the *status quo* was the expired contract; (2) whether the trial court unlawfully interfered with the Board's statutory authority to set wages; and (3) whether the trial court erroneously issued a mandatory injunction in ordering the Board to pay the teachers pursuant to the expired contract.

On July 1, 1974, the Board and SEA entered into a two-year collective bargaining agreement covering wages, hours and other terms and conditions of employment for the school years 1974-75 and 1975-76.

Among its numerous provisions, the agreement set forth salary schedules for both nurses and teachers represented by SEA. Wages under these schedules are determined, with some exceptions, on the basis of years of service (the "step" or vertical column) and professional attainment (horizontal column).

A number of months before the date of the expiration of the collective bargaining agreement, which was June 30, 1976, the Board and SEA commenced negotiations for a new agreement. The Board had, according to the affirmative defense filed by defendants, adopted a resolution on March 1, 1976, "freezing" teachers' salaries, effective July 1, 1976, at the wage rate then applicable to each position under the schedule set forth in the collective bargaining agreement for the school year 1975-76.

Negotiations continued into August of 1976, when the Board mailed to the teachers an "appointment letter" for the purpose of employing teachers for the 1976-77 school year. The letter specified the rate of pay for a teacher under the previously announced wage freeze, which was under the teachers' last step and column placement during the 1975-76 school year.

On August 24, 1976, a workshop day was scheduled for the teachers. This was a paid workshop, but no pupil instruction was involved. Almost all of the 1032 teachers reported for work on this date. The next day, however, the first day of scheduled classes, SEA struck the Board. More than 75 percent of the teachers did not report for work. The Board immediately filed a complaint for injunction and a motion for a temporary restraining order. A portion of the order issued in response to the Board's motion is the subject of this appeal.

The Board first asserts that the trial court erroneously found that the *status quo* was the situation existing prior to the freeze order by the Board, that is, the 1975-76 contract. Rather, the Board, argues, the *status quo* is to be found on August 24, 1976, the day the teachers participated in the workshop. Prior to that time the Board contends that there was no dispute or controversy from which to determine the *status quo*. According to the Board, the strike interrupted the *status quo*.

■■ The purpose of a temporary restraining order is to preserve the *status quo* until the trial court can consider the case on the merits. (*Bohn Aluminum & Brass Co. v. Barker* (1973), 55 Ill. 2d 177, 303 N.E.2d 1.) As we noted at the head end of this opinion, the *status quo* is defined as the last actual, peaceable, uncontested status which preceded the controversy. (*Armour & Co. v. United American Food Processors, Inc.* (1976), 37 Ill. App. 3d 132, 345 N.E.2d 795.) The granting or denial of a temporary restraining order rests in the sound discretion of the trial court. (*Mars, Inc. v. Curtiss Candy Co.* (1972), 8 Ill. App. 3d 338, 290 N.E.2d 701.) The issue here is whether the last actual, peaceable, uncontested

status which preceded the controversy was the participation of the teachers in the workshop, or the existing contract.

■■■ We must hold that the trial court correctly found that the *status quo* was the existing contract. We disagree with the Board that there was no dispute or controversy prior to the strike. A labor dispute exists where both the union and the employer have submitted demands concerning wages and conditions of employment, and these demands have been neither accepted nor compromised. (See *Central Foundry Division of General Motors Corp. v. Holland* (1976), 36 Ill. App. 3d 998, 345 N.E.2d 143.) The evidence here shows that negotiations had been taking place for many months and that no agreement was reached. Moreover, both counsel agreed at oral argument that the "freeze order" actually was adopted *before* negotiations commenced. And, in fact, negotiations occurred the weekend before the schools were to reopen and continued after the strike began. From this evidence, we conclude that the controversy commenced long before August 24, 1976, the day the teachers participated in the workshop. Therefore, the last actual, peaceable, uncontested status which preceded the dispute was the 1975-76 contract which existed between the Board and SEA.

The Board's reliance upon *Duval v. Severson* (1973), 15 Ill. App. 3d 634, 304 N.E.2d 747, is misplaced. In this involved case, plaintiffs filed suit alleging breach of a pre-incorporation agreement. After entering into this agreement, the parties incorporated and each of the three shareholders were to be paid $350 per week. Plaintiffs' salaries were increased by a vote of the directors to $500 on March 24, 1972. Then, in September of 1972, a dispute arose over the acquisition of a new store. Because plaintiffs would not support the acquisition in the manner sought by the defendants, the directors voted to reduce plaintiffs' salaries to $350. On application of the plaintiffs, the trial court entered a preliminary injunction requiring, *inter alia*, that plaintiffs be paid $350. On appeal, the court held that this portion of the order was improper because it did not preserve the *status quo*, being the amount of plaintiffs' salaries prior to September of 1972. Similarly, the prevailing situation in the instant case was the 1975-76 contract, and the controversy commenced when the Board froze salaries and negotiations began.

The Board also cited *Millikan v. Jensen* (1972), 4 Ill. App. 3d 580, 281 N.E.2d 401, but that case is distinguishable in that the question as to what constituted the *status quo* was not an issue in that case.

Next, the Board asserts that the trial court's order constitutes judicial interference in the operation of the school district. The Board believes that providing public school education is an exclusive legislative matter upon which the judiciary cannot intrude, absent unconstitutional, illegal, arbitrary or capricious action.

There is absolutely no question in our minds whatever that the Board alone has the authority to fix the amount of teachers' salaries (Ill. Rev. Stat. 1975, ch. 122, par. 10—20.7). But we are equally convinced that the Board's argument is inapplicable to the situation involved in this case. The trial court did not order the Board to raise teachers' salaries. What the court did do was order the parties to continue functioning pursuant to the expired contract. Only incidentally were the teachers' salaries increased pursuant to the horizontal and vertical levels provided for in the 1975-76 contract—a contract negotiated by and agreed to by the parties.

■■ Furthermore, by choosing to invoke the extraordinary remedy of a temporary restraining order, the Board was seeking to preserve the *status quo*. The board should not be heard to complain now because the trial judge did as he was obligated to do under the law. Also, the power of a court of equity to impose terms and conditions in granting relief is an inherent one, and the court is not restrained by strict legal rights of the parties, but may impose such terms and conditions as are demanded by justice and regard for righteous conduct. (42 Am. Jur. 2d *Injunctions* §301 (1969).) Under these circumstances, the temporary restraining order did not interfere with the Board's statutory authority to fix salaries.

■■ Finally, the Board asserts that the trial court erroneously issued a mandatory injunction in ordering it to pay teachers pursuant to the expired contract. The Board points out that neither party sought this relief and it cites a number of cases for the proposition that where the effect of a mandatory directive is to override the authority and discretion of a public body, it must be reversed. (*Lyle v. City of Chicago* (1934), 357 Ill. 41, 191 N.E. 255; *Grillo v. Sidney Wanzer & Sons, Inc.* (1975), 26 Ill. App. 3d 1007, 326 N.E.2d 180; *Cook County Police Association v. City of Harvey* (1972), 8 Ill. App. 3d 147, 289 N.E.2d 226.) Once again we deem these cases to be inapposite. The effect of the trial court's order was not to issue a mandatory injunction, but rather was a finding made as to the *status quo*, which was to be preserved pending a final resolution of the controversy.

■■ After oral argument, the teachers filed a motion to dismiss the appeal on the ground that an appeal of a part of an injunction by a party in whose favor the injunction has been granted is not permissible. Supreme Court Rule 307 (Ill. Rev. Stat. 1975, ch. 110A, par. 307), however, provides for an appeal from an order refusing to modify an injunction. This rule has been made applicable to temporary restraining orders. (*Bohn Aluminum.*) It follows that the Board's appeal from the refusal to modify the temporary restraining order is also appealable. The fact that the Board was the prevailing party in the trial court does not bar its right to appeal where its pecuniary interest has been directly affected by the order in question. (See *In re Estate of Harmston* (1973), 10 Ill. App

3d 882, 295 N.E.2d 66; *Vece v. De Biase* (1964), 31 Ill. 2d 542, 202 N.E.2d 482.) Consequently, the motion to dismiss the appeal is denied.

For the foregoing reasons, the order of the Circuit Court of Sangamon County is affirmed.

Affirmed.

CRAVEN, P. J., and REARDON, J., concur.