THOMAS G. POULAKIDAS *et al.*, Plaintiffs-Appellees, *v.* ELIAS CHARALIDIS *et al.*, Defendants-Appellants.

First District (4th Division)   Nos. 78-719, 78-872 cons.

Opinion filed January 18, 1979.

Law Offices of Barbara B. Hirsch, of Chicago, for appellants.

Nicholas T. Kitsos, of Chicago, for appellees.

Mr. JUSTICE LINN delivered the opinion of the court:

Plaintiffs, Niko Efstathiou, Thomas Poulakidas and The Maine Lobster House, Inc., brought this action for an accounting and dissolution of an alleged partnership operating The Maine Lobster House, Inc., a restaurant business. Defendant, Elias Charalidis, appeals from an interlocutory order granting plaintiffs' motion for the appointment of a receiver *pendente lite* to manage the restaurant's financial affairs. Defendant contends, *inter alia*, that it was error for the trial court to appoint a receiver *pendente lite* absent a clear showing of fraud or an imminent danger of dissipation or loss to the business assets.

We agree with the defendant, reverse the order appointing the receiver *pendente lite*, and remand the case for further proceedings.

The Maine Lobster House, Inc., is an Illinois corporation operating a restaurant in Chicago. In December 1975, defendant Charalidis and plaintiff Efstathiou acquired all of the outstanding shares of the corporation. Charalidis is the president of the corporation and Efstathiou, the secretary. Plaintiff Poulakidas is an attorney who represented Charalidis and Efstathiou in the purchase of the restaurant and in other matters relating to the business.

On March 20, 1978, plaintiffs Efstathiou and Poulakidas brought this action for an accounting and other related relief. The complaint was also filed on behalf of The Maine Lobster House, Inc. Chicago Title and Trust Company, trustee under a land trust agreement involving the restaurant building, was named as a nominal defendant.

Generally, the complaint alleged that plaintiffs and defendant had entered into an oral partnership agreement to purchase and operate The Maine Lobster House, Inc.; that plaintiffs had performed all their obligations under this agreement; that defendant had ousted plaintiffs from the business and that defendant had secretly appropriated profits and assets of the business without accounting to his partners. Plaintiffs sought an accounting and dissolution of the alleged partnership and requested temporary relief pending the termination of the litigation.

On March 23, 1978, plaintiffs moved the trial court for the appointment of a receiver *pendente lite* and other equitable relief to restrain the transfer or encumbrance of the business assets. At the April 7, 1978, hearing on that motion, defendant appeared specially, charging that he had not been properly served. The hearing on plaintiffs' motion was continued until April 19, 1978, during which time proper service was obtained on the defendant. The defendant filed an answer to the complaint, denying the material allegations of the complaint and alleging several matters as affirmative defenses.

The hearing on plaintiffs' motion for temporary relief commenced on April 19, 1978. We will highlight only the relevant testimony.

In September 1975, Charalidis and Efstathiou asked Poulakidas to assist them in acquiring The Maine Lobster House restaurant. Poulakidas and Efstathiou assert that the parties entered into an oral partnership to acquire the corporation and the option to purchase the improved real property containing the restaurant. It is maintained by plaintiffs that Poulakidas was to be an undisclosed partner in the venture. No written documents were presented which evidence a partnership, and defendant denies that the parties entered into such an agreement.

In December 1975, the parties purchased The Main Lobster House, Inc. The sellers of the restaurant business took back a $50,000 chattel mortgage. Poulakidas put up one-third of the cost of the business, his total investment being $20,000 and the performance of certain legal services on behalf of the corporation. In addition, Poulakidas guaranteed one loan to the business of $15,000 and co-signed a note for $14,000 along with Charalidis and Efstathiou. Charalidis contributed the balance of the money necessary to complete the purchase of the restaurant business. Efstathiou made no capital contribution. All of the outstanding shares of stock in the corporation are in the names of Charalidis and Efstathiou, but Poulakidas maintains he is entitled to receive shares from the others whenever he requests them.

In 1977, the business exercised the option to acquire the real property and building in which the restaurant is operated. Poulakidas participated in negotiations for a $200,000 loan from the National Bank of Greece to effectuate the purchase; however, Efstathiou and Charalidis later completed the purchase of the property without including Poulakidas in the transaction. Charalidis put up his own residence as additional collateral to secure the loan needed to purchase the restaurant building and property. Title to the real property is held in a land trust. Three-quarters of the beneficial interest is held by Charalidis and one-quarter by Efstathiou.

After the business was purchased in 1975, Charalidis and Efstathiou operated the restaurant on a daily basis and each drew a weekly salary of $300. Charalidis, who had more experience in the restaurant business, managed all the financial matters. The restaurant employed an accountant who maintained records and prepared tax returns for the business based only on information given him by Charalidis. This accountant was dismissed by Charalidis prior to the hearing, and a new accountant retained.

There is some dispute regarding the nature of the services rendered to the business by Efstathiou. However, it is undisputed that since

November 1977, for health or other reasons, Efstathiou has neither worked in the restaurant nor drawn a salary. Since that time, Charalidis has managed the business exclusively. While Efstathiou was working in the restaurant, he entrusted the financial matters to Charalidis and signed batches of blank checks so that Charalidis could pay the bills. Although he claims to have been locked out of the restaurant by Charalidis, the restaurant is open daily and Efstathiou has made no attempt to return to the business. Several past and present employees of the restaurant testified that Charalidis works long hours and is a competent restauranteur.

The daily business transactions of the restaurant are accounted for by checks turned in by the waitresses at the end of the business day. The waitresses are checked out by Charalidis who records the checks and deposits the money in the bank. Charalidis also handles transactions with the credit card companies. Since Efstathiou has been absent from the business, only Charalidis' signature appears on checks drawn on the accounts of The Maine Lobster House, Inc.

With regard to the financial situation of the restaurant at the time of the hearings, it was undisputed that the business was heavily indebted to the National Bank of Greece. An officer of the bank testified that payments on all the business' obligations to the bank were up to date. Poulakidas stated that he believed the business was several months behind in payments to the former owners of the restaurant. Efstathiou testified that the restaurant owed money to the cheese and fish suppliers. However, another supplier testified that the restaurant had a good credit standing and paid its bills promptly. Charalidis also stated that all of the suppliers were paid up to date.

Plaintiffs attempted to show that Charalidis has monthly personal expenses in excess of his $300 a week salary from the business. Charalidis admitted that he had made substantial improvements to his residence for which he makes monthly payments of $600 to $700.

On April 21, 1978, at the conclusion of the testimony, the trial judge entered an order appointing a receiver *pendente lite* for the limited purpose of handling the financial affairs of the business. Defendant Charalidis immediately took this interlocutory appeal pursuant to Supreme Court Rule 307(a)(2) (Ill. Rev. Stat. 1977, ch. 110A, par. 307(a)(2)), and we stayed the appointment of the receiver *pendente lite* pending a resolution of this matter on appeal.

OPINION

■■■ The application for the appointment of a receiver is addressed to the sound discretion of the court. (*Steinwart v. Susman* (1968), 94 Ill. App. 2d

471, 238 N.E.2d 200.) However, in such cases the standards by which the court's appointment of a receiver must be measured are exceptionally stringent. A court of equity has the power to appoint a receiver of a corporation only when conditions of dissension, dispute, fraud or mismanagement exist, which make it impossible for the business to continue or to preserve its assets. (*Duval v. Severson* (1973), 15 Ill. App. 3d 634, 304 N.E.2d 747.) It is well recognized that the appointment of a receiver is an extraordinary and drastic remedy to be exercised with great caution. (*Bagdonas v. Liberty Land & Investment Co.* (1923), 309 Ill. 103, 140 N.E. 49; *Steinwart v. Susman* (1968), 94 Ill. App. 2d 471, 238 N.E.2d 200; *Cohen v. Financial Acceptance Co.* (1965), 56 Ill. App. 2d 359, 206 N.E.2d 308.) The appointment of a receiver is appropriate only in cases of urgent necessity where there is a present danger to the interests of the investors, consisting of a serious suspension of the business and an imminent danger of dissipation of the corporate assets. (*Firebaugh v. McGovern* (1949), 404 Ill. 143, 88 N.E.2d 473.) Even where the appointment of a receiver is temporary and for the limited purpose of preserving property and continuing the business until the dispute between the parties can be resolved, these rigid standards must be applied. *Firebaugh v. McGovern* (1949), 404 Ill. 143, 88 N.E.2d 473.

■■ After reviewing the record in this case, we must conclude that the able trial judge misapprehended the severity of the circumstances which must be shown before the law will sanction the appointment of a receiver *pendente lite*. The record before us contains no evidence of fraud on the part of defendant Charalidis, nor a sufficient basis upon which to conclude that the business assets are in immediate danger of dissipation or loss.

The major creditor of the business, the National Bank of Greece, is being paid promptly. Some evidence indicates that the business may be indebted to other creditors, but not so severely as to impair its credit standing. Excluding the absence of Efstathiou from the restaurant, the business is being managed by Charalidis as it has been since the parties acquired it. Efstathiou's assertion that he has been locked out of the business is offset by his admission that, although the restaurant is open daily, he has made no attempt to return to work. The testimony relating to Charalidis' income and personal expenses is at this point in the proceedings inconclusive.

Although no accounting has been rendered by Charalidis to the others, there is no evidence in the record that an accounting was requested before this lawsuit was filed. Furthermore, this court has been assured by counsel for defendant that all of the books and records of the business will be made available to the plaintiffs for examination, study and copying.

The most compelling evidence concerns the unsatisfactory records kept by defendant. Although it could be concluded from the evidence that the system of record keeping maintained by defendant is inadequate, this does not, at this point in time, provide proof of wrongdoing or indicate that defendant has appropriated business assets for his own use.

We note that a receiver should not be appointed merely because the measure can do no harm, for this is almost never the case. "The appointment of a receiver impairs the credit of the corporation, interferes [*sic*] with its management, and imposes upon the court the onerous duty of corporate management which it is not qualified to perform and which it should not undertake except in extreme cases." (16 Fletcher, Cyclopedia Corporations §7697, at 112-13 (perm. ed. 1962).) Mere dissension and dispute between parties is an insufficient cause to invoke the drastic remedy of receivership. *Duval v. Severson* (1973), 15 Ill. App. 3d 634, 304 N.E.2d 747.

■■ The appointment of a receiver *pendente lite* is warranted only where there is no other adequate remedy or means of securing the desired result. (*Fox v. Fox Valley Trotting Club, Inc.* (1953), 349 Ill. App. 132, 110 N.E.2d 84; *Steinwart v. Susman* (1968), 94 Ill. App. 2d 471, 238 N.E.2d 200.) Where, as here, the dispute between the parties can adequately be resolved by an accounting, that course of action should be followed rather than seeking the appointment of a receiver. We urge the parties to exercise diligence in pursuing this action to a prompt resolution in the trial court.

Without reaching the other issues raised on appeal, and for the reasons stated, we reverse the order appointing the receiver *pendente lite* and remand the cause to the trial court for further proceedings.

Reversed and remanded.

JOHNSON and ROMITI, JJ., concur.