INDIANA EDUCATION EMPLOYMENT RELATIONS BOARD, Victor P. Hoehne, as Chairman of the Indiana Education Employment Relations Board, and Mill Creek Community School Corporation Board of School Trustees, Appellants (Respondents below)

v.

MILL CREEK CLASSROOM TEACHERS ASSOCIATION, George Shepherd, and Linda Trout, Appellees (Petitioners below).

No. 1183S397.

Supreme Court of Indiana.

Nov. 16, 1983.

**710**

Linley E. Pearson, Atty. Gen. of Indiana, Jeffrey L. Simnick, Deputy Atty. Gen., Indianapolis, for appellants.

Richard J. Darko, Janet C. Knapp, Bayh, Tabbert & Capehart, Indianapolis, for appellees.

HUNTER, Justice.

This case is before this Court upon the petition to transfer of plaintiffs-appellees, Mill Creek Classroom Teachers Association. The Hancock Superior Court found in favor of the Teachers that the School Board had violated the provisions of Ind.Code § 20–7.-5–1–12(e) (Burns 1975) by failing to maintain the status quo on teachers' salaries during contract negotiations. That decision was reversed by the Court of Appeals, Fourth District, in an unpublished opinion in which they found that this case was moot. We now grant transfer. The opinion and decision of the Court of Appeals are hereby vacated, and plaintiffs' petition to transfer is granted. The decision of the trial court is affirmed.

The essential facts are not in dispute and were succinctly summarized by the Court of Appeals:

"On August 25, 1977, the Mill Creek Classroom Teachers Association (Teachers) and the Mill Creek Community School Corporation (School Board) entered into a two year contract effective as of August 1, 1977. The contract was to remain in effect until July 31, 1979, except that salary, insurance and extracurricular salary were to be reopened for bargaining in 1978. Appendix A of that agreement contained the salary schedule by which teachers were to be paid under the contract.[1] Essentially the schedule consists of three columns: one setting out the years of experience, the second a list of salary figures under the heading 'Bachelor Degree' and the third a list of higher salary figures under the heading 'Master Degree.' An individual teacher's salary is determined by finding that teacher's years of experience and then locating the corresponding figure under either the bachelor's or master's column. When a teacher receives a master degree that teacher is said to have made a 'lane change' from the bachelor's lane to the master's lane. The increase in salary based on increased experience is called an 'increment.'

"At the beginning of the 1978–79 school year, negotiations were continuing between the Teachers and the School Board on salary. As of August 31, 1978, which

---

1. "The salary schedule was set up as follows:

| Yrs. Exp. | Bachelor Degree | Master Degree |
|---|---|---|
| 0 | 8905 | 9355 |
| 1 | 9155 | 9595 |
| 2 | 9375 | 9885 |
| 3 | 9595 | 10175 |
| 4 | 9815 | 10465 |
| 5 | 10035 | 10755 |
| * * * | | |
| 20 | | 15605" |

was the School Board's budget submission date, no agreement had been reached. In that situation the provisions of Ind.Code 20–7.5–1–12(e) take effect. That subsection provides in part:

> "If no agreement has been reached on the items to be bargained collectively fourteen [14] days prior to the submission date, the parties shall continue the status quo and the employer may issue tentative individual contracts and prepare its budget based thereon. During this status quo period in order to permit the successful resolution of the dispute, the employer may not unilaterally change the terms or conditions of employment that are issues in dispute.

"The School Board issued the first payroll check to its teachers based upon the 1977–78 salary schedule that had expired pursuant to the terms of the negotiated contract. The School Board paid its teachers the same dollar amounts of salary for the 1978–79 school year that they received for the 1977–78 school year. In collective bargaining parlance, the teachers were not given incremental or lane change adjustments to reflect their increased experience or training."

*Indiana Education Employment Relations Board v. Mill Creek Classroom Teachers Association,* (Oct. 28, 1982) No. 4–1081 A 139, slip op. at 2–3.

A complaint of an unfair labor practice was filed with the Indiana Education Employment Relations Board (IEERB) by the Teachers alleging that the School Board had refused to abide by the status quo as required by the statute when they failed to grant the incremental and lane change salary adjustments. The Hearing Examiner ruled in favor of the School Board, finding that the status quo had been maintained. The IEERB adopted the decision of the Hearing Examiner, but the Hancock Superior Court overruled the IEERB and found that the status quo had not been maintained.

Both the IEERB and the School Board appealed from the trial court's decision.

Oral argument was held before the Court of Appeals on September 28, 1982, and at that time, the court *sua sponte* raised the issue of mootness. The court found that the instant dispute had been solved through the negotiation of a new contract which was signed on December 20, 1978, and which included the payment in full of all incremental and lane change raises withheld during the negotiation period. The court held that no substantive questions remained and there was no justiciable controversy before them. They further found that the case did not involve a question of great public interest and that there was no evidence the problem was capable of repetition. They held, therefore, that the case was moot and reversed the trial court for that reason.

The primary issue in this case which was resolved by the trial court in favor of the Teachers is whether the School Board violated the statutory provision requiring a maintenance of the status quo by withholding salary increases provided under a prior contract pending agreement on a new contract. We agree with appellees that although this issue is moot with respect to the parties in the instant case, it is an issue which does recur whenever negotiation on a new contract continues after the start of a new school year and also recurs in many school districts throughout the state. Appellees have introduced evidence to show that salary increments have been denied to teachers during the status quo period in at least twelve school corporations during the last two years.

It also is an issue of great public interest since violations of the statute governing collective bargaining between school corporations and their certified employees would necessarily undermine the bargaining relationship between school corporations and teachers and have a detrimental effect upon the overall educational environment. The legislative intent behind the school employee bargaining statute is to develop "harmonious and cooperative relationships between school corporations and their certified employees" and "to protect the public

by attempting to prevent any material interference with the normal public school educational process." Ind.Code § 20–7.5–1–1(a) and (c) (Burns 1975). Violations of this statute could not be in the public interest.

The law in Indiana is well settled that although a specific issue may be moot, the fact that it recurs year after year and is of great public interest is sufficient to allow the issue to be considered on its merits. *State ex rel. Smitherman v. Davis,* (1958) 238 Ind. 563, 151 N.E.2d 495; *State ex rel. Branigin v. Morgan Superior Court,* (1967) 249 Ind. 220, 231 N.E.2d 516; *In re Estate of Cassner,* (1975) 163 Ind.App. 588, 325 N.E.2d 487. Alleged violations of our statute are clearly against the general public interest since they are inconsistent with the statutory goal of encouraging harmonious labor relations between the government and its employees and have a detrimental effect on public education. These alleged violations are occurring throughout the state and recur on many occasions when there is bargaining on a new contract. Therefore, this case is appropriate for our review.

Turning to the merits of the issue, we must determine precisely what is the status quo within the meaning of the statute. While the term is not defined in the statute, the following is the generally accepted legal definition: "STATUS QUO: The existing state of things at any given date. . . . the last actual, peaceable, uncontested status which preceded the pending controversy." Black's Law Dictionary 1264 (rev. 5th ed. 1979).

In this case, it is apparent that the experience-based salary increases and lane change adjustments were part of the last uncontested contract of 1977–78. In order to maintain the status quo of that contract, the school board was required to maintain the status quo both as to the salary schedule and the increments which were a part of that schedule.

Furthermore, it is clear that one of the major factors in determining the status quo is the expectation of employees in the continuance of existing terms and conditions of their employment. Where the school corporation has consistently paid incremental wage increases based merely upon years of service or the attainment of an additional degree, employees still reasonably expect their accrued wage increases even though negotiations for a new agreement are pending. If school corporations are not required to pay the increments, they are free to use the increments as a bargaining tool.

For instance, an employer may be encouraged to prolong negotiations past the expiration of the existing agreement to gain bargaining leverage. In effect, this tactic would exact a penalty on the employees and their bargaining agent for exercising their rights under an existing agreement. The employees would be deprived of the present use of the increments to their salary even though they may later recover these increments as part of a new contract. Maintenance of the status quo after expiration of a contract and during negotiations for a new contract is important because it serves to continue the balance in the bargaining power of the parties as well as provide the flexibility necessary to reach agreement in the give and take inherent in the collective bargaining process.

Other jurisdictions have found that school corporations are legally required to pay wage increments which are part of an existing contract in order to maintain the status quo pending negotiation of a new contract. *Nassau Teachers Association v. School Board of Nassau County,* 8 FPER ¶ 13206 (Fla.1982); *In the Matter of Communications Workers of America and State of New Jersey,* 7 NJPER ¶ 12235 (N.J.1981); *California School Employees Association v. Davis Unified School District,* 4 PERC ¶ 11031 (Cal.1980); *Springfield Board of Education v. Springfield Education Association,* 47 Ill. App.3d 193, 5 Ill.Dec. 374, 361 N.E.2d 697, 95 LRRM 3000 (4th DCA 1977); *NLRB v. Allied Products Corp.,* 548 F.2d 644, 94 LRRM 2433 (6th Cir.1977).

Our statute clearly provides the school corporation "may not unilaterally change the terms or conditions of employment that are issues in dispute" during the status quo period. Ind.Code § 20–7.5–1–12(e). Since the salary increments were part of the existing wage structure, they were part of the status quo. The trial court properly found that the denial of the scheduled increases was a failure to maintain the status quo and that the school corporation had committed an unfair labor practice.

The trial court also found as an alternative basis for its judgment that the school board's action violated the equal protection clause of the Fourteenth Amendment to the United States Constitution since the teachers' salaries in that school corporation were not based upon their years of experience and degree of training in contravention of the law of this state. We do not deal with this issue since we are affirming the trial court's judgment on the basis of the school board's failure to maintain the status quo.

■ It is our conclusion of law that the school corporation unilaterally changed an existing condition of employment, instead of maintaining the status quo, when they denied the teachers their experience-based and lane adjustment salary increases which were part of the 1977–1978 contract. The School Board, therefore, did violate our Certified Educational Employee Bargaining Statute. Ind.Code § 20–7.5–1–1 *et seq.* We affirm the trial court's judgment enjoining the School Board from further violations of Ind.Code § 20–7.5–1–12(e) and reversing the order of the IEERB in this case.

For all of the foregoing reasons, transfer is granted; the opinion and decision of the Court of Appeals are vacated, and the trial court's judgment is affirmed.

GIVAN, C.J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.