D. NELSEN & SONS, INCORPORATED, *et al.,* Plaintiffs-Appellants, *v.* GENERAL AMERICAN DEVELOPMENT CORPORATION *et al.,* Defendants-Appellees.

First District (4th Division)   No. 76-1113

Opinion filed July 14, 1977.

Keck, Cushman, Mahin & Cate, of Chicago, for appellants.

Querrey, Harrow, Gulanick & Kennedy, Ltd., of Chicago, for appellee Suburban Trust & Savings Bank.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from a judgment by the circuit court of Cook County. Daniel B. Nelsen, Jr. and D. Nelsen & Sons, Incorporated, (hereinafter "plaintiffs") brought the action in the circuit court to obtain a temporary and permanent injunction restraining defendants General American Development Corporation (hereinafter "GADC") and First California Company (hereinafter "First California") from obtaining payment on a $300,000 nonnegotiable certificate of deposit, and restraining defendant Suburban Trust & Savings Bank (hereinafter "Suburban Trust") from making payment thereon to said parties. Plaintiffs also sought an adjudication that Suburban Trust retain those funds in trust for plaintiffs. After a bench trial, judgment was entered for plaintiffs and against defendants GADC and First California, and judgment was entered for defendant Suburban Trust against the plaintiffs. Plaintiffs appeal only from the judgment order in favor of Suburban Trust.

The issues submitted for review are (1) whether Suburban Trust breached a duty to the plaintiffs; and (2) whether Suburban Trust's actions were the proximate cause of the plaintiffs' loss.

In late 1969 plaintiff Daniel Nelsen was approached by an agent of GADC and was asked whether he would be interested in a business transaction which involved a sale and buy-back of certain property owned by GADC. Mr. Nelsen was informed he would receive a profit of $300,000 should he participate. Thereafter, from late November 1969 to March 1970, Mr. Nelsen and representatives of GADC participated in 10 or 12 meetings to formulate the details of the transaction.

In order for Mr. Nelsen to participate, it was necessary for him or his company, D. Nelsen & Sons, Incorporated, to obtain a loan in the sum of $300,000 as down payment on the land in question, which was given a sale price of $2,000,000. Mr. Nelsen borrowed the $300,000 from the Suburban Trust.

The sale and buy-back arrangement called for Mr. Nelsen to obtain a cashier's check from Suburban Trust in the sum of $300,000 and to endorse it to GADC. At Suburban Trust's request, in order to stabilize funds, GADC was to reendorse the same check to Suburban Trust and obtain a one-year nonnegotiable certificate of deposit.

Mr. Nelsen informed Suburban Trust that when the certificate of deposit matured GADC would use the funds to buy back the property from Nelsen, and Nelsen would use the funds to pay off his loan with Suburban Trust. The buy-back portion of the arrangement, however, was

never consummated. GADC, instead, assigned the nonnegotiable certificate of deposit to First California and Suburban Trust acknowledged the assignment over the protest of Nelsen.

According to Mr. Nelsen's testimony, Suburban Trust's president, Mr. Lagergren, during negotiations, indicated the certificate of deposit would not be assignable. The testimony of Mr. Lagergren, however, is there never was any encumbrance whatsoever on the assignability of the certificate of deposit. Furthermore, nothing in writing exists showing any encumbrance on the assignability of the certificate.

Entered as an exhibit at trial, the certificate of deposit issued to GADC shows no limitation of assignability on its face. The certificate provides, *inter alia*:

"Certificate of deposit
Suburban Trust & Savings Bank
March 30, 1970
GENERAL AMERICAN DEVELOPMENT CORP. has deposited in this bank $300,000.

This certificate shall be payable to the registered holder(s), or to the survivor(s), in current funds 12 months after date on return of this certificate properly endorsed with interest at the rate of six per cent per annum.

This deposit will not be paid in whole or in part before maturity and will not bear interest after maturity.

This certificate is nonnegotiable and no assignment shall affect the rights or liabilities of the bank unless and until notice thereof, signed by the assignor(s), and the assignee(s), is received and acknowledged by the bank. Interest on this certificate will be paid every twelve months."

The signature of Mr. Lagergren, acting in his capacity as president of Suburban Trust, appears at the bottom right hand corner on the face of the certificate.

First California held the certificate until it needed cash, and then the certificate was assigned a second time. On December 1, 1970, First California assigned the certificate to a customer, Central National Bank in Chicago. The terms of this assignment agreement were similar to the terms of the prior assignment agreement between GADC and First California.

This lawsuit was commenced on March 29, 1971, just prior to the maturity of the certificate of deposit on March 30, 1971, in order to prevent the removal from the State of Illinois of the funds represented by the certificate pending a final determination of the rights of the various parties.

On April 1, 1971, after being served with a temporary restraining order

issued in this case, Central National Bank in Chicago assigned the certificate back to First California. Suburban Trust was notified of this assignment and acknowledged it.

At the onset of this lawsuit the $300,000 loan to Nelsen was in default and nothing had been paid on it. After receiving a demand letter from Suburban Trust in late November 1971, Mr. Nelsen paid off the loan with his own funds.

When the trial court denied plaintiffs' motion for a temporary injunction, plaintiffs filed an appeal from that interlocutory order. On May 18, 1972, the appellate court reversed the trial court and remanded with directions to enter a temporary injunction pending disposition of the case on its merits (*D. Nelsen & Sons, Inc. v. General American Development Corp.* (1st Dist. 1972), 6 Ill. App. 3d 6, 284 N.E.2d 478). The trial court thereupon entered a preliminary injunction order on June 21, 1972.

Prior to the publication of the appellate court's opinion in *Nelsen,* and just about two weeks after plaintiffs filed their complaint, the trial court entered an order denying plaintiffs' request for a preliminary injunction. The order required plaintiffs' temporary restraining order bond for $25,000 remain in force and effect until after an adjudication as to any damages the defendants may have suffered as a result of the court proceedings. The order then directed First California and Suburban Trust to file any petition for damages, costs, or attorneys fees alleged being due as a result of the court proceedings up to and including April 12, 1971.

That same day, plaintiffs filed a notice of appeal. To prevent the funds from leaving the State pending an appeal of the interlocutory order, plaintiffs obtained an order the same day staying the force and effect of the interlocutory order for ten days. Plaintiffs had to post a bond for $10,000 for that ten-day period.

Because the certificate of deposit did not draw interest after its maturity date, Suburban Trust was forwarded a court order, by agreement of the parties, to place the proceeds of the certificate into bankers acceptances, which would draw interest.

At the request of First California, who intended to file a petition pursuant to the court's order of April 13, 1970, to recover damages from plaintiffs for tying up the proceeds of the certificate by the issuance of the temporary restraining order, and who were threatening to seek other damages for further loss of use of the funds pending the interlocutory appeal, plaintiffs entered into a stipulation with First California agreeing to allow an irrevocable letter of credit, issued to the clerk of the court, to be held to stand in the place of the funds represented by the bankers acceptances. The stipulation provided:

"It is hereby agreed between the parties to this Stipulation that

the substitution of the Letter of Credit for the Bankers Acceptances and funds held by Suburban Trust & Savings Bank shall not be raised by either party as an issue on appeal."

An order directing Suburban Trust to file the irrevocable letter of credit in the place of the bankers acceptances was entered by the trial court on April 23, 1971. The irrevocable letter of credit No. 70-236, issued by the United States National Bank, San Diego, California, and addressed to the clerk of the circuit court of Cook County, Illinois, and in the amount of $325,000, was filed on April 23, 1971.

The substituted security represented by the irrevocable letter of credit subsequently became worthless when the United States National Bank, San Diego, became insolvent and the Federal Deposit Insurance Corporation, as receiver, took over its operations. Although the plaintiffs obtained an order from the trial court on March 14, 1975, directing First California to substitute adequate security for the now worthless letter of credit, First California was never able to do so, because it had also become insolvent.

On May 13, 1976, plaintiffs tried their claim against GADC and First California. Being insolvent, neither was represented at the trial and plaintiffs merely had to prove up their claims against those defendants.

On May 27, 1976, plaintiffs separately tried their claim against Suburban Trust. After a full trial on the merits, the trial court found on the issues for Suburban Trust and against the plaintiffs. Plaintiffs now bring this appeal.

Plaintiffs argue, because of the agreements entered into involving Suburban Trust's $300,000 loan to Nelsen and GADC's $300,000 certificate of deposit with Suburban Trust, that Suburban Trust incurred an obligation (in favor of Nelsen) to disallow any attempted assignment of the certificate by GADC. We disagree with this, plaintiffs' most basic contention.

■■■ There is ample proof in the record supporting a finding the certificate of deposit issued to GADC was fully assignable. The face of the certificate itself recognizes the possibility of assignment of the instrument. If the intention of the parties was to encumber the assignability of the certificate, such language could have been stricken, or a clause describing a different intention could have been added. It has been the opinion of this court that a time certificate of deposit is transferable by assignment and the bank's obligation is to pay the assignee, who stands in no better position than the assignor when demand for payment is made (*Bonhiver v. State Bank of Clearing* (1st Dist. 1975), 29 Ill. App. 3d 794, 331 N.E.2d 390). Even taking into account the testimony of the parties at trial, concerning the arrangement, plaintiffs have failed to show the parties intended the certificate be nonassignable.

By recognizing the assignment of the certificate of deposit from GADC to First California, which Suburban Trust was obligated to do, and by securing the fund in its custody until ordered by the court, Suburban Trust in no way breached any duty to the plaintiffs.

Assuming, arguendo, Suburban Trust improperly recognized the assignment of the certificate, plaintiffs would still fail to recover.

Under the allegations of plaintiffs' complaint there existed a controversy between plaintiffs and First California with respect to the money represented by the certificate of deposit. Suburban Trust made no claim to such money.

■■ When there are conflicting claims to a fund held in custody of one making no claim to that fund, that custodian is permitted, when agreed by the parties who have claims to the fund, to present the money to the court and leave the rival claimants to settle their contest in a proceeding wherein a final judgment will be a termination of the controversy between all parties (see *Frank v. North Shore Farms, Inc.* (1969), 115 Ill. App. 2d 57, 253 N.E.2d 45). This would have been the result if Suburban Trust had filed an interpleader action, which could have been filed as a counterclaim. Ill. Rev. Stat. 1969, ch. 110, par. 26.2.

■■ The fund represented by the certificate of deposit was, by order of court, transferred into bankers acceptances. This was done with the express agreement of the plaintiffs. Later, plaintiffs entered into a stipulation with First California agreeing to allow an irrevocable letter of credit, issued to the clerk of the court, to be held in place of the funds represented by the bankers acceptances. An order was entered by the trial court, pursuant to the stipulation, directing the letter of credit be filed in place of the bankers acceptances. Suburban Trust was, therefore, effectively released by the court from its duty as custodian of the fund.

The cause of the plaintiffs' losses in this case was the breach by GADC of its agreement to repurchase the property from the plaintiffs. A second cause of the plaintiffs' losses was the plaintiffs' consent evidenced by the stipulation to substitute the funds represented by the certificate of deposit ultimately for a letter of credit, which later turned out to be worthless.

We find Suburban Trust has properly shown (1) it did not breach a duty to the plaintiffs; and (2) its actions were not the proximate cause of plaintiffs' loss.

■■ The plaintiffs also charge Suburban Trust with tortious interference with the contractual arrangement between plaintiffs and GADC. A review of the record reveals, however, no mention of this theory of recovery was made at trial. An issue or theory not presented or considered by the trial court cannot be raised for the first time on review (*Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 324 N.E.2d 417; *Hamer v. Kirk* (1976), 65 Ill. 2d 211, 357 N.E.2d 506). There being no reason to

limit the application of this doctrine in the case at bar, the issue of contractual interference is not properly before us.

For the foregoing reasons the judgment of the circuit court of Cook County is hereby affirmed.

Affirmed.

JOHNSON and LINN, JJ., concur.