HARRY R. RYMER, Plaintiff-Appellant, *v.* KENDALL COLLEGE, Defendant-Appellee.

First District (1st Division)    No. 77-1949

Opinion filed September 11, 1978.

Wayne B. Giampietro and Michael M. Ushijima, both of Chicago (Ligtenberg, DeJong, Poltrock & Giampietro, of counsel), for appellant.

Lawrence I. Kipperman and James S. Whitehead, both of Chicago (Sidley & Austin, of counsel), for appellee.

Mr. JUSTICE BUCKLEY delivered the opinion of the court:

This action began as a suit by plaintiff Harry R. Rymer for specific performance of his contract of employment with defendant Kendall College. In the circuit court of Cook County, both parties filed motions for summary judgment and submitted affidavits and other materials in support of their motions pursuant to section 57 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 57). Judgment was entered for Kendall College. It is from this judgment that Rymer now appeals.

For the reasons stated below the judgment of the circuit court of Cook County is affirmed.

It is undisputed that Rymer was employed by the college from 1963 to 1976, that he obtained tenure in 1968, and that he was notified by the college administration in November 1975, that his services would not be needed after January 1976, and that as of August 1976, he would be placed on leave of absence without pay. During the first semester of the 1975-76 academic year, Rymer was teaching physics and data processing. The notice of his impending release stated that, in view of the dwindling number of students taking physics, that course would be discontinued as of fall, 1976, and with it, the position in physics would be abolished. It noted that Rymer's performance in teaching data processing had been unsatisfactory, and stated that he would be replaced in both physics and data processing for the second semester, but his pay would continue through August of 1976. His leave of absence was described as of indefinite duration, but he was told that, should the demand for physics justify re-introduction of that course, Rymer would be offered that position.

Later the college decided to pay Rymer for the period of September to November 1976, a full year beyond the date he was notified of his release.

During the second semester of the 1975-76 academic year, part-time instructors were used to teach physics and data processing. Tenured

faculty members taught a number of mathematics courses in the college's day program and part-time instructors taught one basic mathematics course and one business mathematics course in the night program.

It is undisputed that Rymer's doctorate is in astronomy with equal hours in mathematics and that he taught many mathematics courses at Kendall College.

The parties agree that the contract between Rymer and the college incorporated by reference the policy manual of the college, and that the portions of that policy which are relevant are the following paragraphs dealing with protections afforded tenured faculty members:

> "After the expiration of a probationary period, members of the full-time faculty shall have tenure. Their service shall be terminated only for adequate cause, except in the case of retirement for age, or under extraordinary circumstances because of financial exigencies of the College."

> "6. Nothing in this section on Tenure shall in any way restrict or limit the power of the Board (of Trustees) to make reductions in the number of faculty members because of insufficient funds, decrease in enrollment, or discontinuance of particular courses of instruction; provided, however, that the discontinuance of a course of instruction shall not cause those teachers of this course who are qualified to teach other courses to be placed on leave of absence if positions are available in other courses of instruction which such teacher is qualified to teach. If a non-probationary appointment is terminated because of a financial emergency, the released faculty member's place shall not be filled by a replacement within a period of two years unless the released faculty member has been offered reappointment and has declined. Whenever it is necessary to decrease the number of faculty members, because of insufficient funds or decrease in enrollment, the Board of Trustees, upon recommendation of the President, may cause the necessary number of faculty members, beginning with those serving probationary periods, to be placed on leave of absence without pay, but only in the reverse order of the dates of appointment. If employment at Kendall College has been interrupted, the date of the most recent appointment shall be considered."

Rymer contends that the actions of the college in releasing him during the 1975-76 academic year constituted a breach of his contract of employment because these actions were inconsistent with the terms of the policy manual relating to tenure. In his pleadings, motion for summary judgment and brief on appeal, he makes a series of subsidiary contentions as to how his release violated these terms. We understand his contentions in the circuit court to have been that his release was improper because:

(1) If his release was a termination for cause, he did not receive any notice of charges and no grounds for such a termination existed;

(2) His release was not based on financial exigencies, insufficient funds, decreased enrollment or discontinuation of particular courses;

(3) If his release were based on any of these grounds, it was still improper because he was not given an opportunity to teach courses for which he was qualified that were still being offered at the college; and

(4) In any case the action of the college administration in releasing him was improper because only the board of trustees of the college has that power.

The circuit court found that Rymer's release did not constitute a breach of his employment contract because his being placed on leave of absence was properly grounded on discontinuation of a particular course, that there were no openings in courses he was qualified to teach, and that he was not entitled to displace any tenured faculty member teaching a course for which he was qualified. The court also found that the administration was not acting *ultra vires* when it released Rymer and that the remedy of specific performance requested by Rymer was unavailable to enforce a personal employment contract.

On appeal, Rymer renews his contentions below, though in somewhat different terms, and appears to add a number of new contentions. First, he now argues that an indefinite leave of absence is tantamount to dismissal, so that the only possible grounds for such action would be cause, age or *bona fide* financial exigencies of the college. Second, he argues that there is or ought to be a public policy or common law concept of tenure that would bar dismissal in the absence of these grounds. To the extent that these contentions exceed the scope of those made in the circuit court, however, they are waived. *D. Nelsen & Sons, Inc. v. General American Development Corp.* (1977), 51 Ill. App. 3d 62, 366 N.E.2d 381.

A final contention on appeal is that the circuit court erred both in reaching the issue of availability of equitable relief and in determining that such relief was unavailable to him.

The first issues raised by Rymer concern construction of his contract of employment with Kendall College.

The question of construction of a contract, where material issues of fact are not involved, is a question of law, and a reviewing court may make an independent determination of such a question. *Knickerbocker Roofing & Paving Co. v. Mendius Associates, Inc.* (1968), 95 Ill. App. 2d 96, 237 N.E.2d 813.

■■ Rymer's first contention, that his release could not have been for cause, requires no detailed consideration. The letter notifying him of his

release clearly indicated that the ground for his release was discontinuation of a particular course of instruction.

It may be noted that Rymer's unpreserved argument on appeal that his release constituted a dismissal because placing him on indefinite leave of absence without pay was tantamount to dismissing him runs counter to the clear wording of the college's tenure policy, which provides three grounds for outright dismissal and three grounds for placing tenured faculty members on unpaid leave of absence. That placement on leave of absence is not fully equivalent to dismissal is equally clear from provisions of the policy providing that a faculty member placed on leave of absence is entitled to teach any course for which he is qualified and for which an opening occurs within two years of his release. Accordingly, there is no merit to Rymer's contention that his release was actually a dismissal.

Rymer's second contention disputes that his release was properly based on discontinuation of a particular course of instruction. Rymer did not elaborate on this point in his motion for summary judgment, but the circuit court considered the possibility that, although the reason assigned for his release was discontinuation of a particular course of instruction, it was actually due to a decrease in enrollment. As the following discussion indicates, these two grounds have significantly different consequences in terms of rights of tenured faculty members.

The circuit court noted that college-wide enrollment in daytime courses declined in the period prior to Rymer's release. However, enrollment in physics also dropped drastically during the same period. Whether the latter is due to the former is not proved, but that such a tendency would exist is obvious. Accordingly, it is possible that Rymer's release was ultimately due to a decrease in overall enrollment, one effect of which was a decrease in enrollment in physics, which led the college to discontinue that course and therefore single out Rymer for release.

Rymer would have us construe the college's tenure policy to provide that discontinuation of a course of instruction is not distinguishable from a decrease in overall enrollment as a ground for releasing a faculty member where the discontinuation of the course is itself the result of an overall enrollment decrease.

Such a construction would either render the verbiage devoted to discontinuation of a course mere surplusage or require that discontinuations of courses be treated differently, depending on the reason behind them. The circuit court rejected this construction.

We find no error in the circuit court's determination. The applicable rule of law is:

> "In construing contracts, to determine their intent, it is long

established law that a construction should be adopted, if possible, which ascribes meaning to every clause, phrase and word used; which requires nothing to be rejected as meaningless, or surplusage; which avoids the necessity of supplying any word or phrase that is not expressed; and which harmonizes all the various parts so that no provision is deemed conflicting with, or repugnant to, or neutralizing of any other." *Coney v. Rockford Life Insurance Co.* (1966), 67 Ill. App. 2d 395, 399, 214 N.E.2d 1.

To view the language regarding discontinued courses as surplusage would clearly violate this rule. To regard that language as intending that discontinuations of classes be classed according to whether they are occasioned by enrollment decreases amounts to supplying distinctions not expressly made in the contract.

Before any terms not expressed will be supplied to a contract it is necessary to consider that, "where there is no ambiguity in the written terms it is the instrument that affords the sole criterion of the parties intentions." *Village of North Riverside v. Brookfield-North Riverside Water Com.* (1973), 15 Ill. App. 3d 752, 754, 305 N.E.2d 221.

We see no ambiguity in the contract as written. It provides clearly that, notwithstanding other tenure-protection provisions, faculty members may be placed on leave of absence for any of three grounds where there is no other suitable course for them to teach, and that releases occasioned by two of these grounds are subject to seniority considerations. The third ground, discontinuation of a course, is not. We see no ambiguity in the description of this third ground that would call for classing discontinuations of courses according to their ultimate cause.

Rymer argues that refusing to draw such a distinction would violate the rule against ascribing a meaning to a contract term that would be repugnant to other terms because under such a construction it would be possible for the college to effectively circumvent all of the protections afforded to a tenured faculty member by assigning him to teach an unnecessary course and then cancelling that course.

We cannot agree with this criticism. On the contrary, this construction appears very much in accord with the overall purposes of the tenure policy, since discontinuation of a particular course will naturally render the services of the particular faculty member teaching that course unnecessary, at least for a time, whereas insufficient funds or a decrease in overall enrollment would create a general need to eliminate some unspecified faculty member. Accordingly, using seniority to determine which person to release would be appropriate in the latter case but in the former it could result in release of a productive teacher and retention of one whose services are no longer needed.

It is clear, therefore, that Rymer's construction would fill an alleged loophole in tenure protection of dubious significance but would undermine seriously the ability of the college to react.

■ Accordingly, the written terms of the tenure policy give rise to no ambiguity when assigned their plain meaning, whereas Rymer's proposed construction would lead to an anomaly and must therefore be rejected. Rymer's release from teaching duties therefore was properly grounded on discontinuation of the course in physics he was teaching.

The next of Rymer's contentions is that his release violated the college tenure policy because he should have been retained to teach one of several courses being offered which he was qualified to teach.

It is clear that Rymer should not have been placed on leave of absence if positions were available in courses which he was qualified to teach. The issue is whether there were any such positions.

Rymer did not specify in his motion for summary judgment which of the courses being offered at the college he should have been offered the chance to teach. He referred, however, to his release as being contrary to his employment contract in that he should have been given an opportunity to teach other courses which he was qualified to teach and priority over other personnel with less seniority and tenure.

As to Rymer's claim to priority, the circuit court found that there were a number of mathematics courses being offered that Rymer was qualified to teach, but these were being taught by faculty members who had acquired tenure, albeit more recently than Rymer. Accordingly, these positions would be available to Rymer only if he were entitled to displace faculty members with less seniority than he.

■ The circuit court found, however, that by its terms the college tenure policy does not provide for displacement of junior faculty when a senior faculty member is placed on leave of absence for the ground of discontinuation of a particular course of instruction. As our discussion of the proper construction of these terms indicates, we share this view. Accordingly, we agree that Rymer had no right to displace other faculty members, and therefore no right to be offered any position teaching mathematics courses already assigned to tenured faculty members.

■ In considering courses which Rymer might have been qualified to teach, the circuit court first considered Rymer's argument that he should have been permitted to continue teaching physics during the second semester of 1976. The court noted that Rymer was paid his full salary for that semester. The fact that his services were not utilized during that period does not appear on its face to constitute a breach of the college's contractual duties to Rymer and Rymer does not elaborate on this point. Accordingly, we cannot say that the finding of the trial court that this did not constitute a basis for an action in breach of contract was erroneous.

On appeal, Rymer specifically argues that he should have been permitted to teach a course in data processing, one in business mathematics and a basic mathematics course offered at night. Resolution of these arguments depends on Rymer's qualifications in the first two instances, and in the latter instance, on whether the night program was within the scope of Rymer's contract of employment. By their motions for summary judgment, both parties acknowledged that there was no genuine issue of fact concerning Rymer's qualifications and the status of the college's night program and that only a question of law was involved (*Allen v. Meyer* (1958), 14 Ill. 2d 284, 292, 152 N.E.2d 576). Accordingly, the task of the circuit court was to determine the significance of these agreed facts under the contract as a matter of law.

Regarding the course in data processing, Rymer makes a bare mention of its existence, but does not directly argue that he was qualified to teach this course. The circuit court observed that Rymer's own deposition shows that, although he did in fact teach this course at one time, his ability to teach this applications-oriented course proved inadequate. The court concluded that Rymer was not qualified to teach this course, and we see no error in this determination because Rymer has failed to produce any facts whatever indicating he was qualified to teach this course.

The same is true regarding Mathematics 123, Business Math, a course for which the college hired a part-time instructor. Rymer produced no evidence that he was qualified to teach this course, so there was no basis for the circuit court to find that he was.

There was, however, one course being offered for which Rymer was qualified, but this course, dealing with basic mathematics, was offered under the college's night program. The circuit court was presented with an uncontradicted affidavit of Andrew N. Cothran, president of Kendall College, stating that the night program was totally distinct from the day program and that faculty members for the night program were contracted for separately. Accordingly, the trial court found that the college tenure policy did not require that Rymer be offered a night program position. Because Rymer produced no evidence that the college's night program was not distinct, this determination cannot be regarded as erroneous.

Rymer's fourth contention, that his release violated his employment contract because it was not authorized by the college board of trustees, was found by the circuit court to fail on its merits.

It is true that the tenure provisions of the policy manual speak in terms of the power of the board of trustees, but there is nothing in them to indicate that placing a faculty member on leave of absence requires formal action by the board. The pertinent language provides: "Nothing in this section on Tenure shall in any way restrict or limit the power of the

Board to make reductions in the number of faculty members" in specified circumstances, including discontinuation of a course of instruction.

■█ Thus, nothing in the policy manual indicates that the Board was unable to delegate its power to the college administration, and Rymer has produced no evidence that there had not been such a delegation of power. Accordingly, the circuit court's finding that Rymer's release was not an *ultra vires* act cannot be regarded as erroneous.

Rymer's final contention is that the circuit court erred both in reaching the issue of availability of the remedy of specific performance and in its determination that such a remedy was unavailable under a personal employment contract such as that between Rymer and Kendall College.

■█ In view of our holding that Kendall College's action in placing Rymer on indefinite leave of absence without pay did not constitute a breach of his employment contract, the availability of equitable relief in the event of such a breach is no longer an issue. Accordingly, we need not reach the merits of this contention. *People ex rel. Johnson v. Doglio* (1976), 43 Ill. App. 3d 420, 356 N.E.2d 1360.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

GOLDBERG, P. J., and O'CONNOR, J., concur.