NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

HV & CANAL, LLC, *Plaintiff/Appellee*,

*v.*

UPPER IOWA UNIVERSITY, *Defendant/Appellant*.

No. 1 CA-CV 17-0621
FILED 9-20-2018

---

Appeal from the Superior Court in Maricopa County
No. CV2015-009781
The Honorable Dawn M. Bergin, Judge

**AFFIRMED**

---

COUNSEL

Dickinson Wright PLLC, Phoenix
By Robert A. Shull, Amanda E. Newman
*Counsel for Plaintiff/Appellee*

Spiess & Bell, PC, Phoenix
By James O. Bell, Yvonne R. Love
*Counsel for Defendant/Appellant*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which
Presiding Judge Jennifer M. Perkins and Judge Jon W. Thompson joined.

---

**W I N T H R O P**, Judge:

¶1	Upper Iowa University ("UIU") appeals the superior court's judgment in favor of HV & Canal, LLC ("HV") for breach of a commercial lease.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2	On November 20, 2012, HV and UIU executed a lease agreement ("the Lease"), pursuant to which UIU would lease 13,389 square feet of space from HV for a period of up to fifteen years and four months. In addition to monthly rent, the Lease obligated UIU to pay other charges to HV, including fees for heating, ventilation, and air conditioning ("HVAC") maintenance and repair.

¶3	Paragraph 1(l) of the Lease required UIU to provide a Letter of Credit ("LOC") to secure its performance:

> Security Deposit:
> Unconditional and Irrevocable Letter of Credit substantially in the form attached hereto as Exhibit "G" having a term of five (5) years beginning on the Lease Commencement Date in the amount of Five Hundred Thousand and 00/100 Dollars ($500,000.00).  The Letter of Credit shall be reduced by One Hundred Thousand and 00/100 Dollars ($100,000.00) on each of the first five (5) anniversaries of the Lease Term if there ha[ve] been no defaults by Lessee under the terms of the Lease beyond all applicable notice and cure periods.

¶4	The form attached as Exhibit "G" was titled "Form of Letter of Credit" and reflected Wells Fargo Bank, N.A. ("Wells Fargo") as the issuer; however, nothing in the body of the Lease required that Wells Fargo issue the LOC.  The only other reference to the security deposit in the Lease appeared in paragraph 4, which required the security deposit to be provided "upon the execution of this Lease" and allowed HV to use it for any damages resulting from any breach, nonperformance, or default by UIU.

¶5	On November 21, 2012, UIU provided HV with a LOC issued by Wells Fargo in the amount of $500,000 with an expiration date of May 1, 2018.  Although some spaces on the original Exhibit "G" had been left blank, the blank spaces had been filled in to match the Lease requirements.

¶6         The Lease commenced on May 1, 2013.  On May 1, 2014, the LOC was reduced by $100,000 pursuant to the security deposit provision.

¶7         On October 20, 2014, Susan Dusenbery, UIU's Associate Vice President of Finance, sent an email to Jerry Tokoph, President of HV's Managing Member, advising that UIU wanted to substitute a LOC from Bankers Trust for the Wells Fargo LOC.  UIU wanted to substitute the Bankers Trust LOC because, unlike Wells Fargo, Bankers Trust did not require UIU to deposit funds to obtain the LOC.  Thus, the proposed substitution would have allowed UIU access to the remaining funds on the Wells Fargo LOC; UIU, however, never communicated the reason for the request to HV.  Dusenbery requested that HV execute documents to effectuate the substitution.

¶8         Tokoph forwarded the request to Steve O'Connor, HV's Controller, who told Dusenbery the LOC "is security for debt we have on the property," and the request would be sent to HV's lender for review.  On October 23, 2014, Dusenbery asked O'Connor for a response to the request by 12:00 p.m. on October 27.  O'Connor responded the same day that HV could not accept the transfer and the LOC needed to remain with Wells Fargo.  Dusenbery requested an explanation for the denial, and O'Connor responded that it was "[b]ased on the financial strength of Wells Fargo," and that "[t]he lender and partners would prefer to keep the letter of credit with Wells Fargo."

¶9         On October 30, 2014, Christopher Kragnes, UIU's General Counsel and Chief Legal Officer, wrote a letter to O'Connor, arguing that because the Lease required only that the LOC be "substantially in the form attached hereto as Exhibit 'G,'" and the Bankers Trust LOC met those requirements, UIU did not need permission from HV for the substitution.  He asserted that HV's refusal to accept the substitute LOC constituted an event of default and was "unreasonable, putative [sic], and an act of bad faith."  He demanded that HV execute documents for the substitution by November 3, 2014.  HV did not do so, and UIU took no further action until it vacated the premises, ceased making lease payments, and removed from the premises collateral in which HV had a perfected security interest — all on or about June 30, 2015.  Meanwhile, as of May 1, 2015, the Wells Fargo LOC was reduced to $300,000 in accordance with the terms of the Lease.

¶10        On July 2, 2015, HV notified UIU that it was in material breach of the Lease, failure to timely tender rent and other payments would trigger an event of default, and HV intended to draw upon the Wells Fargo LOC.

On July 24, HV again notified UIU that it was in material breach of the Lease, by failing to pay rent and return the collateral taken by UIU.

¶11      On August 5, 2015, HV filed a complaint against UIU, alleging breach of the Lease and conversion of collateral. UIU then filed an answer and counterclaim, seeking a declaratory judgment and injunctive relief.

¶12      In November 2015, HV moved for partial summary judgment on liability. UIU responded and cross-moved for summary judgment, arguing that HV's refusal to accept the substitute LOC constituted a material breach, thereby excusing UIU's continued performance under the Lease. HV maintained that its refusal to accept the proposed substitute LOC did not constitute a breach, and even if it did, the breach was not material and did not excuse UIU from performing.

¶13      On January 15, 2016, the superior court held oral argument on the cross-motions and took the matter under advisement. On March 15, 2016, the court issued a minute entry granting HV's motion for partial summary judgment as to liability on HV's claim for breach of the Lease and denying UIU's cross-motion for summary judgment. The court's grant of partial summary judgment left open the issues of damages on HV's breach of Lease claim, as well as any liability and damages for conversion.[1]

¶14      Before trial, UIU filed a motion in limine to preclude HV from presenting evidence as to various calculated damages, including evidence supporting HV's entitlement to HVAC expenses. The court granted UIU's motion in part, but permitted the admission of evidence regarding the HVAC repair and maintenance costs.

¶15      On February 14, 2017, the superior court held trial on the remaining issues. At conclusion of the trial, the court ordered counsel to file closing arguments and took the matter under advisement. Later, in a minute entry dated June 9, 2017, the court granted judgment as a matter of law, *see* Ariz. R. Civ. P. 50, in favor of UIU on HV's conversion claim after concluding it would result in an impermissible double recovery, but determined that HV was entitled to additional damages in the amount of $63,921 (including $15,681 for HVAC maintenance) for UIU's breach of the Lease.

---

[1]      In the meantime, HV had notified UIU that it intended to draw down the full remaining amount of the Wells Fargo LOC. HV subsequently did so, applying the drawdown to the total amount of its damages.

¶16        On September 18, 2017, the superior court issued a signed judgment in favor of HV on its breach of contract claim against UIU, awarding HV damages in the principal amount of $63,921 and prejudgment interest in the amount of $4,840.30 as of July 5, 2017, plus accruing interest. The court entered judgment in favor of UIU on HV's conversion claim. Finally, the court awarded HV attorneys' fees in the amount of $133,492 and costs in the amount of $2,573.76, plus interest.

¶17        UIU filed a timely notice of appeal. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

**ANALYSIS**

I.        *Summary Judgment as to UIU's Liability for Breach of the Lease*

¶18        UIU argues the superior court erred in granting HV's motion for partial summary judgment as to UIU's liability for breach of the Lease. In concluding UIU materially breached the Lease, the court concluded HV did not breach an express provision of the Lease, no reasonable juror could find that HV breached the implied covenant of good faith and fair dealing, and even if the court was incorrect about the existence of a breach by HV, the alleged breach was, as a matter of law, immaterial. Thus, the court concluded as a matter of law that UIU's performance was not excused by HV's refusal to allow a substitution of the Wells Fargo LOC.

¶19        We review *de novo* a superior court's grant of summary judgment, construing the facts and reasonable inferences in the light most favorable to the opposing party. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12 (2003); *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 482, ¶ 13 (2002). Summary judgment is appropriate if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990); Ariz. R. Civ. P. 56(a). Further, we will affirm summary judgment if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that no reasonable person could find for its proponent. *Orme Sch.*, 166 Ariz. at 309. The existence of cross-motions for summary judgment generally underscores the absence of material factual disputes underlying an issue. *See United Metro Materials, Inc. v. Pena Blanca Props., L.L.C.*, 197 Ariz. 479, 480 n.1 (App. 2000); *LaBombard v. Samaritan Health Sys.*, 195 Ariz. 543, 545, ¶ 2 (App. 1998).

¶20        We also review *de novo* the interpretation of leases and other contracts, which involve questions of law. *Andrews*, 205 Ariz. at 240, ¶ 12;

*accord United Cal. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 257 (App. 1983). As a contract, a lease is governed by the general contract principles of good faith and commercial reasonableness. *Tucson Med. Ctr. v. Zoslow*, 147 Ariz. 612, 614 (App. 1985); *see also Enyart v. Transamerica Ins. Co.*, 195 Ariz. 71, 76, ¶ 14 (App. 1998) ("Arizona law implies a covenant of good faith and fair dealing in every contract." (citation omitted)). The implied covenant of good faith and fair dealing is "as much a part of a contract as are the express terms." *Wells Fargo Bank*, 201 Ariz. at 490, ¶ 59 (citation omitted). Thus, it is possible to breach the covenant of good faith and fair dealing implied in a contract without breaching an express contractual provision. *See id.* at 491, ¶ 64. Generally, a party may breach the covenant of good faith and fair dealing when it "uses its discretion for a reason outside the contemplated range – a reason beyond the risks assumed by the party claiming a breach." *Sw. Sav. & Loan Ass'n v. SunAmp Sys., Inc.*, 172 Ariz. 553, 558-59 (App. 1992) (quoting Stephen J. Burton, *Breach of Contract and the Common Law Duty to Perform in Good Faith*, 94 Harv. L. Rev. 369, 385-86 (1980) (footnote omitted)).

¶21        We agree with HV that it did not breach an express provision of the Lease, and the superior court did not err in ruling that UIU was liable for breaching the Lease. The Lease is entirely silent on substitution of the original (Wells Fargo) LOC. Thus, although the Lease required the original LOC to be "substantially in the form attached hereto as Exhibit 'G,'" no Lease provision (1) created an express right to substitute the original LOC, (2) required HV to accept a substitute LOC, (3) prohibited substitution of the original LOC, or (4) expressly vested HV with discretion to deny a substitution request by UIU. In other words, because the Lease contained no language either allowing or prohibiting substitution of the Wells Fargo LOC, HV did not breach an express provision of the Lease by denying UIU's request.

¶22        Further, to simply imply the right for UIU to unilaterally substitute the Wells Fargo LOC with another LOC might deprive HV of the security for which it bargained, especially if the substitute LOC was not "substantially in the form" of the original (Wells Fargo) LOC. *See generally D. Nelsen & Sons, Inc. v. Gen. Am. Dev. Corp.*, 366 N.E.2d 381, 386 (Ill. App. Ct. 1977) (noting that a "cause of the plaintiffs' losses was the plaintiffs' consent . . . to substitute the funds represented by the certificate of deposit ultimately for a letter of credit, which later turned out to be worthless" after the issuing bank became insolvent).

¶23        Although UIU argues HV arbitrarily withheld its approval of the proposed substitute (Bankers Trust) LOC, and therefore breached the

covenant of good faith and fair dealing, we disagree. The purpose of the original (Wells Fargo) LOC was to provide adequate security to HV in the event of a default by UIU. After Dusenbery asked HV to approve the substitute LOC, O'Connor informed Dusenbery that he was forwarding the request to HV's lender for review, an action the superior court found "reasonable" and we deem prudent given that a substitute LOC could alter the strength of HV's "security for debt [it had] on the property." Although O'Connor did not explain the reason for the denial in his initial email to Dusenbery, he later explained at her request that the denial was based on the comparative financial strengths of Wells Fargo and Bankers Trust. Thus, the reason provided for the denial was not beyond the risks assumed by UIU. *See Sw. Sav. & Loan Ass'n*, 172 Ariz. at 559. Moreover, neither Dusenbery nor anyone else from UIU communicated to HV the reason for UIU's request. *Cf. D'Oca v. Delfakis*, 130 Ariz. 470, 471-72 (App. 1981) ("The burden to furnish sufficient information for a lessor to determine whether a consent to assignment of a lease will be given is the lessee's. The lessor is under no duty to seek out such information. In the absence of information concerning the proposed tenancy and the tenant, the lessor is justified in withholding consent." (internal citations omitted)). Given that LOC substitution was not a part of the Lease or an expectation ever communicated to HV before UIU's request, and given that UIU never explained its need for the substitution and knew HV had bargained for the security of an LOC "substantially in the form" of the original (Wells Fargo) LOC, we agree with the superior court that UIU assumed the risk HV might deny a proposed substitute LOC for financial reasons. *See generally Tucson Med. Ctr.*, 147 Ariz. at 615 (recognizing that "financial irresponsibility or instability" would be an example of a good-faith, reasonable basis for refusing an assignment or sublease).

¶24            If UIU had informed HV that UIU needed access to the remaining $300,000 on the Wells Fargo LOC to pay its rent under the Lease and offered a substantially similar LOC from an issuer of the same caliber as Wells Fargo, an outright refusal to consider the substitute LOC might have constituted a breach of the covenant of good faith and fair dealing. *See Metcalf Constr. Co. v. United States*, 742 F.3d 984, 991 (Fed. Cir. 2014) ("The implied duty of good faith and fair dealing is limited by the original bargain: it prevents a party's acts or omissions that, though not proscribed by the contract expressly, are inconsistent with the contract's purpose and deprive the other party of the contemplated value." (citation omitted)). But here, because the denial was within the risks assumed by UIU and apparently did not interfere with UIU's ability to perform under the Lease—as evidenced by UIU's rent payments over the next eight months—

no reasonable juror could find that HV breached the implied covenant of good faith and fair dealing.

¶25        The superior court, applying the factors set forth in § 241 of the Restatement (Second) of Contracts (1981) as adopted by our supreme court in *Foundation Development Corp. v. Loehmann's, Inc.*, 163 Ariz. 438, 446-47 (1990), also found that, even if it was incorrect about the existence of a breach by HV, the alleged breach was, as a matter of law, not material. UIU argues that the superior court erred in concluding the alleged breach of the Lease by HV was not material. We do not address this argument because, as discussed above, we agree with the superior court that HV did not breach the Lease as a matter of law.

         II.      *Damages for HVAC Expenses*

¶26        UIU argues the superior court erred in awarding HV damages for HVAC expenses. UIU maintains the superior court erroneously considered parole evidence in the form of Tokoph's testimony in interpreting an unambiguous clause (paragraph 11(f)) in the Lease; HV failed to provide a written request for payment in accordance with paragraph 11(f) of the Lease; and even if the court was correct that UIU was required to pay $7,500 (plus three percent) per year regardless of whether HV incurred any actual HVAC expenses, HV failed to meet its burden of proof.

¶27        As previously noted, we review *de novo* the interpretation of leases and other contracts. *Andrews*, 205 Ariz. at 240, ¶ 12. "Our purpose in interpreting a contract is to ascertain and enforce the parties' intent." *Elm Ret. Ctr., LP v. Callaway*, 226 Ariz. 287, 290, ¶ 15 (App. 2010) (citation omitted). In ascertaining intent, we look first to the plain meaning of the words in the contract. *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, ¶ 9 (App. 2009). When contract terms "are plain and unambiguous upon their face, they must be applied as written." *Emp'rs Mut. Cas. Co. v. DGG & CAR, Inc.*, 218 Ariz. 262, 267, ¶ 24 (2008) (quoting *D.M.A.F.B. Fed. Credit Union v. Emp'rs Mut. Liab. Ins. Co.*, 96 Ariz. 399, 403 (1964)). If language in a contract "is reasonably susceptible to more than one interpretation," however, extrinsic evidence may be admitted in interpreting the contract. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 158-59 (1993).

¶28        Paragraph 11(f) of the Lease provides in relevant part:

         On the first anniversary of the Commencement Date and on each anniversary thereafter during the Lease Term (in each

case following receipt of a written request for payment from Lessor), Lessee shall pay to Lessor $7,500 to reimburse Lessor for routine maintenance and repair of such HVAC system during the prior year (the "HVAC Cap"), which HVAC Cap shall be increased by three percent (3%) on the second anniversary of the Commencement Date and each anniversary of the Commencement Date thereafter during the Lease Term.

¶29 At trial, the parties offered competing interpretations for paragraph 11(f). HV argued the paragraph provided for a fixed annual fee of $7,500 (plus annual three percent increases); UIU argued it was intended to reimburse HV for actual costs up to $7,500 (plus the annual increases). Finding the clause was reasonably susceptible to both interpretations, the superior court admitted the trial testimony of Tokoph and awarded HVAC expenses, reasoning as follows:

> [HV] contends that the HVAC provision in the Lease imposes a fixed annual fee for [UIU]'s contribution to the costs of routine maintenance and repair of the HVAC system. For the first year, [UIU] was to pay $7500, and for the second year, $8181 (3% increase). [UIU] argues that [HV] is not entitled to any HVAC payments because: (1) the provision was intended to reimburse [HV] for any actual maintenance costs, not impose a fixed fee; and (2) [HV] failed to make a written request for payment.

> The Court finds that the language of the HVAC provision is reasonably susceptible to both parties' interpretations. The only evidence presented at trial regarding the parties' intent was testimony from Jerry Tokoph, [HV]'s President and Managing Member. Tokoph testified that [UIU] insisted on a fixed amount ($7500 for the first year) to eliminate any risk of incurring more than that amount. According to Tokoph, the fixed amount was a "cap" in the sense that if actual costs exceeded $7500, [HV] would have to pay the excess. [UIU] presented no witness or evidence to refute Tokoph's testimony. The Court therefore finds that [HV] is entitled to recover the requested HVAC payments for 2015 and 2016.

¶30 We do not find paragraph 11(f) to be ambiguous; in our view, UIU's obligation to pay $7,500 (plus a three percent annual increase) is

unconditional. However, even assuming the language in paragraph 11(f) is ambiguous, as UIU argues, the superior court did not err as a matter of law either in allowing extrinsic evidence or in ultimately concluding that the intent of the provision was to impose an annual unconditional HVAC charge that was neither dependent upon nor limited to actual HVAC maintenance and/or repair expenses. *See Taylor*, 175 Ariz. at 158-59 ("Whether contract language is reasonably susceptible to more than one interpretation so that extrinsic evidence is admissible is a question of law for the court." (citing *Leo Eisenberg & Co. v. Payson*, 162 Ariz. 529, 532-33 (1989)). Although UIU argues the paragraph's use of the term "reimburse" suggests UIU shall pay to HV actual costs *up to* $7,500 plus annual increases, HV points out that the paragraph does not use the words "up to" and simply provides that UIU "shall pay to [HV] $7,500" a year, plus annual increases. Accordingly, the superior court properly admitted Tokoph's testimony that paragraph 11(f) entitled HV to a fixed amount annually, and did not err in relying on Tokoph's testimony to resolve any supposed ambiguity. *See Blaine v. McSpadden*, 111 Ariz. 147, 149 (1974) ("A trial court sitting without a jury is the judge of the witness' credibility and the weight of the evidence and the reasonable inferences to be drawn therefrom." (citation omitted)).

¶31 UIU also argues that HV failed to provide a written request for payment in accordance with paragraph 11(f) of the Lease. In making this argument, UIU acknowledges that on at least two occasions, HV "provided UIU with written notice of UIU's alleged breach of the [L]ease for failure to pay rent and 'other charges' as well as its conduct in drawing down the LOC," but maintains HV has not "produced evidence that it provided UIU a written request explicitly requesting monies in turn for its maintenance and repair of the HVAC."

¶32 HV points out, however, that it provided UIU with written notice requesting payment for the HVAC maintenance and repair expenses in its complaint, which appended as Exhibit 6 a schedule of past-due amounts, including the May 2015 HVAC charge, which had not been paid and came due shortly before UIU vacated the premises. Further, the other HVAC charge for which the court found UIU responsible—the May 2016 HVAC charge—came due during pendency of the lawsuit. HV further avows, without dispute from UIU, that HV has asserted a continuing demand for these HVAC charges in its "pleadings, disclosures, pretrial memorandum, and other documents prepared" in this litigation.

¶33 UIU argues for the first time in its reply brief that, even if HV did request payment for HVAC expenses, HV did not comply with

paragraph 28 of the Lease, entitled "Notices – Manner of Giving." Because UIU raises this argument for the first time in its reply brief, it has waived the issue, and we do not further consider it. *See Romero v. Sw. Ambulance*, 211 Ariz. 200, 204 n.3, ¶ 7 (App. 2005).

**¶34** UIU also argues that, even if it was required to pay $7,500 (plus three percent) per year for HVAC expenses, HV nonetheless failed to meet its burden of proof because Tokoph's testimony could be interpreted as ambiguous regarding whether HVAC charges for the 2015-2016 year had been paid. As the trier of fact, however, the superior court resolved any ambiguity in favor of HV. We will not set aside the court's findings of fact unless clearly erroneous. *Blaine*, 111 Ariz. at 149. After reviewing Tokoph's trial testimony, we conclude that the superior court did not err in finding that HV was entitled to recover the requested HVAC payments for 2015 and 2016.[2]

### III. Attorneys' Fees and Costs in Superior Court

**¶35** UIU argues the superior court erred in awarding attorneys' fees and costs to HV and denying UIU's application for attorneys' fees. UIU relies on paragraph 33 of the Lease, and premises its argument on this court reversing the superior court's summary judgment in favor of HV as to liability for breach of the Lease.

**¶36** In pertinent part, paragraph 33 of the Lease provides as follows:

> In the event that it becomes necessary for any party to employ an attorney to enforce any of the terms or provisions of this Lease, *the defaulting party shall pay to the prevailing party all reasonable attorneys' fees and court costs* (if any) in connection therewith, the amount to be fixed by the court without a jury.

(Emphasis added.)

**¶37** In awarding attorneys' fees and costs to HV and denying UIU's fees application, the court explained its reasoning as follows:

> [UIU] bases its argument that it is the prevailing party on [HV]'s failure to prevail on its conversion claim ($184,697) and its recovery of only $63,921 of the $363,921 requested on

---

2       Moreover, as HV correctly points out, UIU has never contended it did actually pay the HVAC fees.

its breach of contract claim. [UIU] fails to take into account, however, that [HV] prevailed on: (1) its motion for summary judgment on liability on the breach of contract claim; (2) [UIU]'s affirmative defense of failure to mitigate damages; and (3) [UIU]'s counterclaims for injunctive relief and declaratory judgment. Furthermore, the attorneys' fees clause states that "the defaulting party shall pay to the prevailing party all reasonable attorneys' fees and court costs . . .." [UIU] is undisputedly the "defaulting party;" therefore, [HV] must be the "prevailing party."

¶38        We find no error in the superior court's reasoning. The court properly held that, because HV prevailed on the cross-motions for summary judgment as to liability for breach of the Lease, UIU was the "defaulting party" and HV was the "prevailing party" under paragraph 33 of the Lease. Accordingly, the court did not err in awarding HV its attorneys' fees and costs.

### IV.        *Attorneys' Fees and Costs on Appeal*

¶39        Both UIU and HV request attorneys' fees incurred on appeal pursuant to the Lease and A.R.S. § 12-341.01(A). HV is the prevailing party on appeal; UIU is not. Accordingly, UIU's request is denied, and we award reasonable attorneys' fees and taxable costs to HV in an amount to be determined upon compliance with Rule 21, ARCAP.

### CONCLUSION

¶40        The superior court's judgment is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA